**Lawrence ARESKOG**

**v.**

**UNITED STATES of America and Patrick J. O'Keefe, et al.**

**Civ. No. H 74-228.**

United States District Court,
D. Connecticut.

May 14, 1975.

Gilbert Shasha, Shasha & Maruzo, New London, Conn., for plaintiff.

Henry S. Cohn, Ass't. U. S. Atty., Hartford, Conn., for the United States & Patrick J. O'Keefe.

Thomas B. Wilson, James F. Brennan, Jr., Suisman, Shapiro, Wool & Brennan, Groton, Conn., for defendant, General Dynamics.

RULING ON PLAINTIFF'S MOTION TO REMAND & DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT OR DISMISSAL

CLARIE, Chief Judge.

The plaintiff, Lawrence Areskog, commenced this action in the Connecticut State Superior Court for New London County and it was thereafter removed to this Court by the petition of the defendants United States of America and Patrick J. O'Keefe. The plaintiff now moves to remand the suit to the State court and the defendants United States and O'Keefe resist the motion to remand and have moved for dismissal under Rule 12(b), Fed.R.Civ. P., or, in the alternative, for summary judgment under Rule 56. The other defendant, General Dynamics Corporation, has moved to dismiss the action for its failure to state a claim, Rule 12(b)(6). The Court denies the plaintiff's motion to remand as to the claims against the United States and Patrick O'Keefe; it dismisses the claim against the United States for want of jurisdiction and grants the summary judgment motion of the defendant O'Keefe. The plaintiff's claims against the defendant General Dynamics as set forth in Counts One and Two of the complaint, are ordered remanded to the State Court; and said defendant's motion to completely dismiss the action is consequently denied.

*Facts*

In essence, the complaint alleges a breach of contract by the defendant General Dynamics, and a tortious interference with the contractual relations between the plaintiff and General Dynamics by the defendants United States and Patrick O'Keefe. From 1941 until June, 1973, the plaintiff served as a civilian employee of the United States Navy. He alleges that during June, 1973, he entered into a contract of employment with the Electric Boat Division of the General Dynamics Corporation, located in Groton, Connecticut. At that time, he was serving as a civilian Production Controller under the overall command of the defendant Captain O'Keefe, then the Superintendent of Shipbuilding, United States Navy, Groton, Connecticut.

The plaintiff claims that Navy Captain O'Keefe caused General Dynamics to breach its alleged employment contract, resulting in the latter's refusal to hire him in accordance with their agreement, after his retirement from his civilian Navy service in June, 1973. According to the affidavit filed by Captain O'Keefe, after he had learned of the employment discussions between the plaintiff and General Dynamics, he contacted General Dynamics concerning the effect of certain Navy regulations covering their proposed employment relationship. These regulations were aimed at avoiding any possible conflicts of interest between Government employees and private contractors. At that same time, Captain O'Keefe also brought to the attention of the General Dynamics officials an "understanding" he had with the Company that it "would not discuss possible future employment opportunities with any Navy employee actively employed in a position to favorably influence dealings between General Dynamics and the Navy." Captain O'Keefe concluded that because of the plaintiff's "sensitive position with the Navy," these employment discussions placed him in a position of substantially conflicting interests. An affidavit filed by Rear Admiral Raymond W. Burk, who as Deputy Commander, Naval Sea Systems Command, was Captain O'Keefe's direct supervisor, essentially confirms that the actions described in Captain O'Keefe's affidavit were taken pursuant to the latter's official responsibility to enforce Navy regulations.

The plaintiff's claim against the United States must be dismissed for lack of jurisdiction. The Federal Tort Claims Act, 28 U.S.C. § 1346(b), does constitute a partial waiver of the sovereign immunity of the federal government, giving the district courts juris-

diction over certain tort claims against the United States.[1] However, since the Act, by its terms, confers *exclusive* jurisdiction on the district courts, the State Court lacked jurisdiction over the defendant United States. Furthermore, among those claims expressly excluded from the Act's waiver of sovereign immunity are those "arising out of . . interference with contract rights," 28 U.S.C. § 2680(h). Since this is such a claim, and since the United States has not otherwise consented to this suit, there could be no jurisdiction in this Court, even as an original matter, over the United States as a defendant.

The defendant Captain O'Keefe based his claim for removal of the action from the State Superior Court on 28 U.S.C. § 1442(a)(1), which concerns removal of actions against federal officers, and provides in relevant part:

"A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office . . . ."

The plaintiff contends that Captain O'Keefe may not invoke the provisions of this statute for the reason that his actions were not taken "under color" of his office. Secondly, he claims that even if removal were proper, summary judgment should not enter, because there is no undisputed factual basis to support Captain O'Keefe's claim to official immunity under the circumstances in which

he acted. Two Supreme Court cases set the bounds for the Court's determination of these two issues. The propriety of removal is governed by *Willingham v. Morgan,* 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969), and the question of official immunity by *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

In construing the "color of office" requirement for removal under § 1442 (a)(1), the *Willingham* court emphasized that the phrase must be broadly construed in order to effectuate the purposes behind the federal officer removal statute. The Court stated:

". . . one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed. In cases like this one, Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)."

395 U.S. at 407, 89 S.Ct. at 1816; also see, *Colorado v. Symes,* 286 U.S. 510, 517, 52 S.Ct. 635, 76 L.Ed. 1253 (1932). The allegations of the complaint, and the affidavits submitted by the Government, clearly demonstrate that the actions of Captain O'Keefe were taken under the color of his office for purposes of § 1442 (a)(1), and the Court so finds.

The plaintiff maintains that the affidavits of Captain O'Keefe and Admiral Burk are insufficient in several other respects as a basis for the removal of this action. While the preferred procedure would be to include, within the

1. 28 U.S.C. § 1346(b) provides:
"Subject to the provisions of Chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

removal petition itself, a "candid, specific and positive" statement of the facts justifying removal, *Maryland v. Soper, No. 1,* 270 U.S. 9, 35, 46 S.Ct. 185, 70 L.Ed. 449 (1926),[2] the Court finds that the submission of these affidavits subsequent to the filing of the removal petition constitutes substantial compliance with this requirement. See, *Willingham v. Morgan, supra,* 395 U.S. at 407, n. 3, 89 S.Ct. 1813. The plaintiff further argues that the affidavits are insufficient to support removal under the *Willingham* rule, because the defendants in the latter case specifically averred that all the actions complained of were taken within the physical confines of a federal penitentiary. The plaintiff would distinguish his claim by arguing that the understanding or agreement which Captain O'Keefe cited to the General Dynamics representatives was a "personal" and not an "official" agreement.

The Court's adoption of these overly technical assertions of the plaintiff would run counter to both the spirit and the explicit language of *Willingham:*

"In a civil suit of this nature, we think it was sufficient for the petitioners to have shown that their relationship to respondent derived solely from their official duties. . . . If the question raised is whether they were engaged in some kind of 'frolic of their own' in relation to respondent, then they should have the opportunity to present their version of the facts to a federal, not a state, court." 395 U.S. at 409, 89 S.Ct. at 1817 (footnote omitted).

Having determined that this action has been properly removed to this Court, the next question is whether the case is ripe for summary judgment on the issue of Captain O'Keefe's official immunity. In support of its summary judgment motion, the Government relies on the affidavits of Captain O'Keefe and Admiral Burk, together with the supporting regulations cited therein. In opposition to said motion, the plaintiff has filed his own affidavit, as well as that of his attorney. His affidavits contain the following assertions: that the plaintiff was not involved in direct negotiations with General Dynamics concerning contract modifications, but instead developed technical specifications which were used for negotiating purposes; that there was no "official" agreement between General Dynamics and Navy officials concerning hiring policies, but only a "personal" agreement between Captain O'Keefe and the General Manager of General Dynamics to the effect that neither would hire the other's employees; and finally that, based on his experience as a former civilian employee and an instructor in classes on the ethical considerations surrounding such employment, it was the plaintiff's opinion that Captain O'Keefe was not acting in furtherance of his official responsibilities in communicating with Electric Boat officials concerning the plaintiff's employment.

The Court finds that the plaintiff's affidavits raise "no genuine issue as to any material fact," Rule 56(e), Fed.R. Civ.P. To the extent that the averments are based on the plaintiff's personal opinion they do not meet the requirement of Rule 56(e) that affidavits be made on personal knowledge and set forth facts which would be admissible in evidence. *See, e. g., Denman v. White,* 316 F.2d 524, 527, ftn. 2 (1st Cir. 1963). Furthermore, allowing for every favorable inference to be drawn from the factual allegations made by the plaintiff, the defendant Navy Captain O'Keefe is

---

2. In addition, 28 U.S.C. § 1446(a) provides: "A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a verified petition containing a short and plain statement of the facts which entitle him or them to removal together with a copy of all process, pleadings and orders served upon him or them in such action."

entitled to summary judgment under the law of official immunity.

The plaintiff initially seeks to distinguish the case of *Barr v. Matteo, supra,* by limiting it to its specific facts. It is true that the immunity issue in *Barr* arose in the context of a defamation suit against a high-level federal official for statements made in a departmental press release. The cases following *Barr,* however, have not adopted the limiting construction urged by the plaintiff. In fact, in one leading case in this Circuit, contracting officers of the General Services Administration were held to be not personally liable in a suit for tortious interference with contractual relations after they had recommended termination of the plaintiff's government contract. *Ove Gustavsson Contracting Co. v. Floete,* 299 F.2d 655 (2d Cir. 1962).

The test under *Barr* is whether the action taken by Captain O'Keefe "was within the outer perimeter of [his] line of duty." 360 U.S. at 575, 79 S.Ct. at 1341. If it was, the defense of absolute privilege must be sustained "despite the allegations of malice in the complaint." *Ibid.* Applying this test to the facts before the Court, the "outer perimeter" of Captain O'Keefe's duties are established in the first instance by the pertinent Navy Regulations and directives. These documents indicate that both military and civilian naval personnel are required to avoid any "private business or professional activity" or any "direct or indirect financial interest" which might present even the appearance of a "conflict between their private interests and the public interests of the United States;" Department of Defense Directive No. 5500.7, August 8, 1967, § IVA; see also, Secretary of the Navy Instruction 5370.2E, November 29, 1967, para. 4; Naval Ship Systems Command Instruction 5370.2D, December 6, 1972.

As an additional aid, the Court may properly consider the interpretation placed upon these regulations by the officers within the Navy chain of command who are charged with their enforcement. *Cf., Howard v. Lyons,* 360 U.S. 593, 595, 79 S.Ct. 1331, 3 L.Ed. 1454 (1959); *Denman v. White, supra,* 316 F.2d at 526. The affidavit of Admiral Burk indicates that it was the responsibility of Captain O'Keefe, as Supervisor of Shipbuilding at Groton, "to implement and enforce controlling regulations of the Department of the Navy," and that the actions taken by Captain O'Keefe were "within the scope of his official responsibilities and authority." Accordingly, assuming that Captain O'Keefe had entered into an agreement with General Dynamics, that the latter would not hire any civilian Navy employees within his command and that he brought this agreement to the attention of General Dynamics officials when he was informed that the plaintiff has discussed employment with them, the Court finds that such actions were within the "outer perimeter" of his line of duty, *Barr v. Matteo, supra.*

Two of the plaintiff's arguments to the contrary require mention. First, the plaintiff contends that Captain O'Keefe may not assert the privilege because his actions were not required by any officially imposed duty. The answer to this claim is to be found in *Barr v. Matteo,* where the Supreme Court stated:

". . . that petitioner was not *required* by law or by direction of his superiors to speak out cannot be controlling in the case of an official of *policymaking rank,* for the same considerations which underlie the recognition of the privilege as to acts done in connection with a mandatory duty apply with equal force to discretionary acts at those levels of government where the concept of duty encompasses the sound exercise of discretionary authority." 360 U.S. at 575, 79 S.Ct. at 1341 (footnote omitted).

Secondly, the plaintiff argues that the actions of Captain O'Keefe were not suf-

ficiently discretionary to enable him to invoke the privilege since, unlike the official sued in *Barr v. Matteo,* Captain O'Keefe served at an "operational" and not a "planning" level.

The Second Circuit has responded to a similar argument by looking beyond the formalities of title and office to the purpose behind the privilege of official immunity.

> "There is no litmus paper test to distinguish acts of discretion, . . . and to require a finding of 'discretion' would merely postpone, for one step in the process of reasoning, the determination of the real question—is the act complained of the result of a judgment or decision which it is necessary that the Government official be free to make without fear or threat of vexations or fictitious suits and alleged personal liability?" *Ove Gustavsson Contracting Co. v. Floete, supra,* 299 F.2d at 659.

Clearly, this determination cannot be made solely on the basis of the rank of the government official involved. *See, Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 456 F.2d 1339, 1345 (2d Cir. 1972); *Galella v. Onassis,* 487 F.2d 986, 993 (2d Cir. 1973). In an area as sensitive as that of conflict of interest, where the standards of conduct are necessarily general, and the public interest strong, it is particularly important that officials be free to take such actions as they deem necessary in order to give content and force to those standards. The denial of the defendant O'Keefe's motion for summary judgment would defeat this important purpose.

▮▮▮▮ Different considerations apply to the claims made against the defendant General Dynamics Corporation. These claims involve no question of federal governmental immunity; instead, they appear to raise only issues of contract law, which are purely matters of state law. Once the action was removed by the defendant Captain O'Keefe, these state law claims were properly before this Court, but only under the theory of pendent jurisdiction. The Court has no independent jurisdiction over them, either on the basis of diversity of citizenship or federal question jurisdiction. Under the circumstances present here, where the properly removed federal claim against the federal defendant has been disposed of prior to trial, it would be an improper exercise of this Court's discretionary power of pendent jurisdiction to retain jurisdiction over the state law claims.

> "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional issue, the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (footnotes omitted).

*Also* see, *Kavit v. A. L. Stamm & Co.,* 491 F.2d 1176, 1179 (2d Cir. 1974). This principle applies as well to removed cases as to those brought originally in federal court. *Rotermund v. United States Steel Corp.,* 346 F.Supp. 69, 76 (E.D.Mo.1972); *also see, Galella v. Onassis, supra,* 487 F.2d at 996.

Accordingly, the plaintiff's claim against the United States is dismissed for lack of jurisdiction; and summary judgment is granted to the defendant O'Keefe. The plaintiff's claims against the defendant General Dynamics is remanded to the State Court for adjudication. So ordered.