**Richard G. LOWE, et al., Plaintiffs,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, et al., Defendants.**

**MONSANTO, Defendant/Third Party Plaintiff,**

v.

**WILLAMETTE–WESTERN CORPORATION, et al., Third Party Defendants.**

Civ. No. 81–3387.

United States District Court, S. D. Illinois.

Jan. 8, 1982.

Paul L. Pratt, P. C., E. Alton, Ill., for plaintiffs.

Robert D. Tucker, St. Louis, Mo., for Norfolk & Western.

Robert W. Wilson, Edwardsville, Ill., for Gatx.

W. Monroe Roberts, Jr., St. Louis, Mo., for Dresser Industries.

## ORDER

FOREMAN, Chief Judge:

Before the Court are the following motions: (1) Motion to Sever Claims and Causes of Action and Remand, filed by plaintiffs on November 12, 1981; (2) Motion to Dismiss or in the Alternative for Summary Judgment, filed by third-party defendant United States on November 27, 1981; and (3) Motion to Dismiss the Petition for Remand of third-party defendant Willamette-Western Corporation, d/b/a Western Environmental Service (WES), filed by plaintiffs on November 20, 1981.

The action arose out of a chemical spill which occurred as a result of a train car derailment. On January 10, 1979, sometime around 11:00 P.M., a Norfolk and Western Railroad tank car travelling through Sturgeon, Missouri, derailed and lost most or all of its contents of 10,000 gallons to the ground. Although first reported to the National Response Center as carbolic acid, the spilled chemical was in fact crude orthochlorophenol, a substance found later to contain a trace quantity of dioxin. Dioxin is a highly toxic chemical. Because of the potential danger and a noxious odor engulfing the town, the authorities evacuated the population. In response to a report of the derailment received from the National Response Center, third-party defendant United States, through the United States Envi-

ronmental Protection Agency (EPA), located in Kansas City, dispatched a three person team to the site to evaluate the situation. The role and responsibility assumed by the EPA upon arrival at the site are subjects of dispute. However, it is clear that the EPA remained at the site throughout the two month cleanup operation and played at least a significant role in cleanup activities. The other third-party defendant, WES, was hired by defendant Norfolk and Western (N&W) to clean up and dispose of the spilled chemical.

On June 1, 1980, the separately filed claims of forty-seven plaintiffs were consolidated into one case in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois. Each plaintiff asserted as one of his claims a count under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, et seq., against Norfolk and Western Railway Company, one of the original defendants in the consolidated action. On September 24, 1981, plaintiffs filed against Monsanto an Amended Count V and Amended Count VI in state court, alleging various acts of negligence with respect to the manufacture and testing of the chemical and reckless conduct with respect to the same in the respective counts. On November 2, 1981, defendant Monsanto filed a third-party action against the EPA and WES. The third-party complaint seeks in four counts indemnity from WES for their negligent and reckless conduct and from the EPA for the same.

The EPA filed its Petition for Removal in federal court on November 6, 1981. The petition referred only to 28 U.S.C. § 1446(a) as authority for removability. On November 16, 1981, WES filed its own petition for removal, specifically citing 28 U.S.C. § 1442(a)(1), as authority for removal.

### I. EPA

In their Motion to Sever Claims and Causes of Action and Remand, plaintiffs argue that the federal statute prohibiting the removal of FELA cases once they are filed in state court, 28 U.S.C. § 1445(a), mandates that this Court sever the main suit which contains the FELA claim from the third-party action and remand the former to state court. Monsanto contends that removal under § 1442(a)(1) removes the entire lawsuit, and that remand of the FELA claim would be inappropriate since (1) unlike the situation existing between §§ 1441(a) and (c), there is no provision under § 1442(a) allowing for severance and remand and (2) judicial economy would be disserved by a remand of a portion of the case. WES is in agreement with Monsanto.

Monsanto and WES, and to some measure, plaintiffs, seem convinced that resolution of the question involves interpretation of the "interplay" between § 1442(a)(1) and § 1445(a). The question so framed is whether the right of removal granted in § 1442(a)(1) to certain governmental defendants supersedes and displaces the right given by § 1445(a) to a FELA plaintiff who has sued in state court to stay there. The Court is of the opinion that no such statutory exegesis is warranted in this case, for the matter is resolved by a reading of the plain language of the removal statutes themselves.

First, § 1442(a)(1) is by its language unavailable to the EPA as authority for removal, since the EPA has been sued only as an agency and no recovery is sought from individual employees. The statute provides:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (1980). The plain wording of subsection one makes it clear that removal is available to any officer of

the United States or any officer of any agency of the United States. Although Monsanto and WES would not agree to this construction and would instead allow removal to any agency of the United States, the very next phrase dispels this alternative construction. The next phrase reads "or person acting under *him*." (Emphasis supplied) "Him" obviously refers directly to the officer of the United States or of the United States agency. It is highly unlikely that Congress would refer to a federal agency, in this case the EPA, as "him." Moreover, subsection (a) provides that any civil action or criminal prosecution commenced against certain following *persons*, enumerated in sub-subsections (1) through (4) may be removed by *them*. Thus, the words of the statute demonstrate that it provides protection for persons, not agencies. This makes sense, since Congress has already provided ample protection against tort suits for its agencies and the entire government in the Federal Tort Claims Act, and any other claims which could be brought in state court are barred by sovereign immunity.

Scholarly support also exists for this position. In reviewing the statute, Professor Moore states:

Subsection (a) of § 1442, which deals with federal officers, is based on former 28 U.S.C. § 76 (1940), § 33 of the Judicial Code of 1911, as amended. Paragraph (1) thereof applies to all officers, persons acting under them, employees of the United States and any agency thereof, whereas the comparable provision in former § 76 was limited to revenue officers engaged in the enforcement of the criminal or revenue laws, and those acting under their authority.

But in extending the application of paragraph (1) to federal officials and employees generally, the revision made no change in the theory or basis for removal that the civil suit or criminal prosecution must be against the officer or employee and based upon an act or acts done under color of office, etc.

J. Moore, 1A *Moore's Federal Practice* 298–302, Par. 0.164[1] (1981) (citations omitted).

Furthermore, other decisions support this conclusion. In *KCPO Employees Credit Union v. Mitchell*, 421 F.Supp. 1327 (W.D. Mo.1976), the district court held that it had no jurisdiction under 28 U.S.C. § 1442(a)(1) of removed garnishment actions since the named garnishee, the United States Post Office, was not an "officer" of the United States or an agency. One passage from Judge Oliver's opinion summarizes the position well:

The government has cited no authority which suggests that "any agency" of the United States, as distinguished from an individual officer of such an agency, has a right of removal under § 1442(a)(1). It is our view that § 1442(a)(1) simply cannot be given such a tortured reading. *Willingham v. Morgan, supra,* traces the ancient history of § 1442(a)(1). The Supreme Court concluded in that case that the federal officer removal statute "is an incident of federal supremacy, and that one of its purposes was to provide a federal forum for cases where *federal officials* must raise defenses arising from their official duties." 395 U.S. at 405, 89 S.Ct. at 1815 (emphasis ours). That case requires that § 1442(a)(1) must be read in a manner sufficiently broad "to cover all cases where *federal officers* can raise a colorable defense arising out of their duty to enforce federal law." 395 U.S. at 406–407, 89 S.Ct. at 1816 (emphasis ours).

421 F.Supp. at 1330.[1] *See, accord, Brewer v. Department of HUD*, 508 F.Supp. 72, 74 (W.D. Ohio 1980); *West v. West*, 402 F.Supp. 1189 (N.D.Ga.1975).

---

1. The *KCPO* court's citation of *Willingham v. Morgan*, 395 U.S. 402, 405, 89 S.Ct. 1813, 1815, 23 L.Ed.2d 396 (1969) is significant. Oft-quoted language from *Willingham* that § 1442(a)(1) should not be given a "narrow grudging" interpretation is inapplicable since the question here is whether the explicit language of the statute confers the right of removal in the first instance. In other words, the question whether an "officer" includes the agency itself is a threshold question different from whether a contempt proceeding is a "civil action or criminal prosecution." *See, North Carolina v. Carr*, 386 F.2d 129 (5th Cir. 1967).

The cases cited by Monsanto as contra authority are unavailing. First, *Westgard v. Blue Cross*, 418 F.Supp. 327 (D.N.D.1976) does not even discuss the issue, although § 1442(a)(1) is cited along with §§ 1441(a) and 1346(a)(2) as bases of jurisdiction. Second, with cases such as *Williams v. Williams*, 427 F.Supp. 557 (D.Md.1976), the Court simply disagrees. The *Williams* court did not analyze the statutory language at all but jumped to a conclusion based on a litany of language from *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969), which might be thought to have led to the opposite conclusion.

It is significant that the EPA did not cite § 1442(a)(1) in its original petition for removal. It cited only § 1446(a). Later, in its brief of November 27, 1981, the EPA did refer to § 1442(a) at page 1 and to § 1442(a)(1) at page 7. This latter, specific reference casts some doubt on the EPA's contention in its Supplemental Memorandum of December 7, 1981, that prior reference to § 1442(a)(1) was a typographical error. However, the EPA is on record as of December 7, 1981 as seeking to remove under the general removal statute, § 1441(a), since no "officer" was sued, and the case was therefore not removable under § 1442(a)(1). As indicated above, the Court agrees with the EPA on this latter point.

## II. *WES*

 Upon consideration, it becomes clear that the petition of WES in this case is insufficient to establish removal jurisdiction under § 1442(a)(1). First, the holding that the EPA cannot remove under § 1442(a)(1) vitiates any reliance placed by WES on that statute. In order for WES to remove, it must establish that it was a "person acting under" an officer of the United States or any agency of the United States. WES has not established that it acted under the direction of an officer, but only that it acted under the direction of the agency itself. Second, WES acted not as a federal officer, since it was not in charge of the cleanup, nor as his agent, since WES's "master" was its own employer, Norfolk and Western.

The acts undertaken were not pursuant to federal law, but were pursuant to a private contract, subject to the overriding requirements of federal regulation. *See, Northern Colorado Water Cons. Dist. v. Board of County Comm'rs.*, 482 F.Supp. 1115 (D.Colo. 1980). Thus, the cases cited by WES are distinguishable. In *Gurda Farms, Inc. v. Monroe County Legal Assistance Corp.*, 358 F.Supp. 841 (D.N.Y.1973), petitioners were employees of a federal program under the direct supervision of federal officials. Similarly, in *Oregon v. Cameron*, 290 F.Supp. 36 (D.Or.1968), petitioners were federally selected and trained volunteer VISTA workers working directly under the Office of Economic Opportunity. In both, the "federal nexus" was much greater since the federal government was responsible for the very existence of the entities employing petitioners and the situation the petitioners found themselves in when they removed. Here, the presence of WES and even the accident itself arose out of private arrangements and activities, and the EPA was merely a regulatory latecomer on the scene.

Third, it appears from the facts adduced in the depositions that the actions taken by WES were not, as the statute requires, "under color of such office." WES cites *Areskog v. United States*, 396 F.Supp. 834 (D.Conn.1975). But in *Areskog*, the petitioner was a naval officer who was Superintendent of Shipbuilding for the United States Navy. His alleged "tortious interference" with plaintiff's contractual relations with General Dynamics was removed since petitioner had, pursuant to regulations, made General Dynamics aware of certain conflict of interest rules which caused the corporation not to rehire plaintiff. Thus, not only was the federal nexus much greater than in this case, but petitioner also had a federal official immunity defense to be raised in state court. Here, not only has WES failed to establish a possible federal immunity it may assert, but as mentioned above, the EPA was merely a regulator under 33 U.S.C. § 1251 *et. seq.*, the Federal Clean Water Act. This is not without recognition that removal under § 1442(a)(1) is broader than the limits of official immuni-

ty. *See, Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). However, WES has simply failed to establish that it was acting under a federal officer under color of that office.[2]

### III. *The EPA and General Removal*

[3] Removal under § 1441(a) and possibly § 1441(c) presents a different question. Since the original removal petition of the EPA cited only § 1446(a), and the EPA has come forward asserting the right to remove under § 1441(a), the Court will accept its petition as filed under authority of the latter section.

That section provides:

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a) (1980). This subsection is further complemented by subsection (c):

(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

28 U.S.C. § 1441(c). As the statute indicates, to be removable a case must be within the original jurisdiction of the federal court. Monsanto argues that third party claims are not cognizable under these statutes and the EPA cannot rely on them as authority for removal. However, the Court need not even advance this far for in the procedural stance the case now stands, the

Court can have no jurisdiction over the EPA.

As the EPA points out in its Supplemental Memorandum of December 7, 1981, Monsanto is seeking only monetary relief in an action based on indemnity principles, alleging that the negligent and reckless conduct of the EPA increased Monsanto's potential liability. The only available avenue against the EPA in an action such as this is the Federal Tort Claims Act (FTCA), which provides that

[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674. Jurisdiction over federal tort claims lies under § 1346 of the Judicial Code, which provides in relevant part that:

Subject to the provisions of Chapter 171 of this title, the district courts ... shall have *exclusive* jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (emphasis supplied).

Since federal courts have exclusive jurisdiction over actions brought under this section, the Circuit Court of Madison County had absolutely no subject matter jurisdiction over the suit against the EPA. And since removal jurisdiction under § 1441(a) is derivative in character, this Court ac-

---

2. Cases cited by Monsanto for WES are not helpful. *Texas v. National Bank*, 290 F.2d 229 (5th Cir. 1961) merely concluded jurisdiction was proper with no discussion of facts. *District of Columbia v. Landmark Servs.*, 411 F.Supp. 1002 (D.N.C.1976) dealt with a claim of

possible immunity under the National Visitor Center Facilities Act of 1968, 40 U.S.C. § 801, *et. seq.* WES asserts no federal immunity here, but apparently argues that the EPA was responsible under *respondeat superior* principles for the accident.

quired no jurisdiction. In the words of Justice Brandeis,

> As the state court was without jurisdiction over either the subject-matter or the United States, the District Court could not acquire jurisdiction over them by the removal. The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction.

*Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922). *See, Gleason v. United States*, 458 F.2d 171, 173–74 (3d Cir. 1972); *Martinez v. Seaton*, 285 F.2d 587 (10th Cir.), *cert. denied* 366 U.S. 946, 81 S.Ct. 1677, 6 L.Ed.2d 856 (1961); *see also, Fruin-Colnon v. M. G. Transport Serv.*, 79 F.R.D. 674 (S.D.Ill.1978); *Schultz v. Director, Fed. Emergency Agency*, 477 F.Supp. 118 (C.D. Ill.1979).

Monsanto in its brief does not contest that jurisdiction lies under the FTCA. Rather, it fails to come to grips with the exclusivity provision of § 1346(b) by suggesting that the Court can allow it to refile its complaint here and that removal is otherwise appropriate by virtue of the petition under § 1442(a)(1) of WES. As for the petition of WES, the Court has already found that it presented no proper basis for removal. As for the suggestion that Monsanto refile, there is no evidence that process was defective or insufficient in the state court. Thus, the removal remains barred by the "derivative jurisdiction" doctrine.

Since the state court had proper jurisdiction over the primary action and the third party claim against WES, this Court has the authority to remand those aspects when the removal petitions prove ineffective. *See*, 28 U.S.C. § 1447(c); *Thorp v. Serraglio*, 464 F.Supp. 149 (N.D. Ohio 149); *Jones v. General Tire & Rubber Co.*, 541 F.2d 660 (7th Cir. 1976). Where, however, the state court had no jurisdiction over that part of the third-party action aimed at the EPA,

this Court has no power to remand those counts but must dismiss them and the EPA outright. *See, Areskog v. United States*, 396 F.Supp. 834 (D.Conn.1975).

In accordance with the above discussion, the Court reaches the following conclusions: (1) the EPA's Motion to Dismiss or in the Alternative for Summary Judgment is hereby GRANTED for reasons given above, and the EPA is DISMISSED from the lawsuit; (2) plaintiffs' Motion to Dismiss the Petition for Removal of WES is hereby GRANTED for reasons given above; (3) plaintiffs' Motion to Sever Claims and Causes of Action and Remand is hereby GRANTED inasmuch as remand is sought, however, the Court makes no severance of the actions. Accordingly, the entire remaining action is hereby REMANDED to the Circuit Court for the Third Judicial Circuit, Madison County, Illinois.

IT IS SO ORDERED.