**Charalabos BAKALIS, etc., et ano., Plaintiffs,**

v.

**CROSSLAND SAVINGS BANK, Defendant.**

**No. CV–91–4256.**

United States District Court, E.D. New York.

Dec. 17, 1991.

been exposed to the AIDS virus, not that he had

Edwards & Angell, New York City, for plaintiffs.

Nixon Hargrave Devans & Doyle, New York City, for defendant.

### MEMORANDUM AND ORDER

SIFTON, District Judge.

This case is currently before this Court on plaintiffs' motion to remand the proceeding to state court pursuant to 28 U.S.C. § 1447(c). For the reasons discussed below this motion is granted.

This case was removed from state court by defendant pursuant to 28 U.S.C. § 1442(a)(1) which, as discussed below, allows, *inter alia*, persons "acting under" officers of the United States to remove to federal courts certain actions in which they are defendants.

The following facts, except where expressly noted, are not disputed.

Plaintiff Olympian Mortgage Group, Inc. ("OMG") is a private mortgage bank locat-

contracted the disease.

ed in Kings County, New York. Charalabos Bakalis a/k/a Bob Bakalis ("Bakalis") is president of OMG.

OMG and Bakalis had credit lines with CrossLand Savings FSB ("CrossLand"). CrossLand is a federally chartered savings bank subject to certain regulations issued by the Office of Thrift Supervision ("OTS"), 12 C.F.R. § 563.180(1)(d), which require the bank to report known or suspected criminal activity that comes to its attention to the OTS and to law enforcement authorities.

The dealings between OMG, Bakalis and CrossLand which led to this litigation involved a series of renegotiations of the credit lines. In the course of these negotiations, on approximately April 18, 1991, CrossLand sent a report concerning changes in the status of the collateral for the credit lines to the Federal Bureau of Investigation ("FBI") and to the OTS.

CrossLand characterizes this report as required by 12 C.F.R. § 563.180(1)(d). Plaintiffs argue this is incorrect because the report was untimely and motivated by a desire for private profit.

In May 1991 CrossLand commenced a law suit in state court against OMG and two other suits against Mr. and Mrs. Bakalis demanding repayment of instruments involved in the credit lines. These were consolidated in Supreme Court, Kings County, before Justice Julius Vinik and are currently pending. The suits were all commenced by motion for summary judgment in lieu of complaint pursuant to New York CPLR § 3213.

On October 8, 1991, plaintiffs brought the current suit in Supreme Court, Kings County. The action was commenced as a separate action rather than as counterclaims to CrossLand's actions because claims such as those presented here are not permissible in actions brought by motion for summary judgment in lieu of complaint.

The case before this Court presents three claims for relief. The first claim is for fraud. This claim alleges that plaintiffs relied to their detriment on affirmative misrepresentations made by CrossLand during the renegotiation of the credit lines.

The second claim is for intentional interference with business relations. This claim alleges that CrossLand's report to the FBI was solely motivated by a desire to harm Bakalis and related business entities and that the report did result in such harm.

The third claim is for defamation. This claim alleges that CrossLand in its report knowingly published incorrect information to the FBI which harmed the business reputation of Bakalis.

On October 30, 1991, CrossLand filed a Notice of Removal of this suit in the Eastern District of New York pursuant to 28 U.S.C. § 1442(a)(1).

On Nov. 12, 1991, Justice Vinik denied CrossLand's summary judgment motions, thereby converting their motions into complaints. CPLR § 3213. At that time, he confirmed the previously granted attachments of plaintiffs' assets.

Plaintiffs seek to have the present suit remanded to state court for consolidation with the three actions already pending before Justice Vinik.

## DISCUSSION

The instant removal is pursuant to 28 U.S.C. § 1442(a)(1) which reads as follows:

"(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue."

In order to satisfy this provision, CrossLand must show that it is a "person," as required by the first sentence of the provision, and both "acting under him" and performing an "act under color of such office," as required by the second sentence.

If removal was inappropriate, the suit is remanded under 28 U.S.C. § 1447(c).

"A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal.... If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

CrossLand's contention is that its report to the FBI and OTS was issued by it as a "person acting under" the director of the OTS since the report was required by 12 C.F.R. 563.180(1)(d), which reads as follows:

"Savings associations and service corporations are required to promptly notify the appropriate law enforcement authorities and the [OTS] after discovery of known or suspected criminal acts."

Subsection 2 defines promptly as within 14 business days after discovery.

Plaintiffs argue that this reading of the statute is barred by the recent Supreme Court decision in *International Primate Protection League v. Administrators of Tulane Educ. Fund,* — U.S. —, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991). They interpret *International Primate* to hold that only natural persons are entitled to remove an action to federal court under 28 U.S.C. § 1442(a)(1).

*International Primate* involved a suit by animal rights groups against the National Institutes of Health ("NIH"), Tulane Educational Fund ("Tulane"), and Institutes for Behavior Resources ("IBR") regarding the alleged mistreatment of certain monkeys. NIH is an agency of the federal government. Tulane is the governing body of a primate research center which entered into an agreement with the NIH in 1986 to care for the monkeys. IBR is a private entity which owns the monkeys. *Id.* 111 S.Ct. at 1703.

NIH removed the case to federal court pursuant to 28 U.S.C. § 1442(a)(1). The Supreme Court ordered the case remanded. *Id.* The case clearly holds that federal agencies are not "persons" entitled to remove. It does not, however, clearly state that only natural persons are qualified to do so. The contrary is at least implied by the Court's discussion of the NIH's argument that the remand application should be denied because it would be futile.

NIH had argued the futility of remand because, *inter alia,* another defendant, Tulane, could clearly remove the case back to federal court. *Id.* 111 S.Ct. at 1709–10. The Court did not respond to this argument by stating that Tulane was not covered by the statute because it was not a natural person. Instead, it opined:

"[W]hether Tulane will be able to remove the remanded case requires a determination whether it is a 'person acting under' the Director of the NIH within the meaning of § 1442(a)(1). This mixed question of law and fact should not be resolved in the first instance by this Court, least of all without an appropriate record."

*Id.* 111 S.Ct. at 1710.

This passage from the Court's opinion at least implies that the Court perceived the uncertainty to lie in the relationship between Tulane and the NIH, rather than in the status of Tulane. In all events, the Court did not rely for its decision on any conclusion beyond the lack of clarity on its current record of Tulane's ability to remove. Therefore, I consider the instant issue, whether a non-natural juridical person other than a government agency can remove, not resolved by *International Primate.*

Plaintiffs cite several other authorities for the proposition that "persons" are only natural persons. Several of these only deal with federal agencies or corporations owned by the federal government as opposed to privately owned corporations. *Lovell Mfg. v. Export–Import Bank of the U.S.,* 843 F.2d 725, 733 (3rd Cir.1988); *Lance Int'l, Inc. v. Aetna Casualty & Surety Co.,* 264 F.Supp. 349 (S.D.N.Y. 1967); *Harlem River Produce Co., Inc. v. Aetna Casualty & Surety Co.,* 257 F.Supp. 160, 163 (S.D.N.Y.1965); J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 0.164[1] at 382–84. Moreover, it is important in

analyzing these cases to note that for the purpose of the removal statute federal "agency" includes "any corporation in which the United States has a proprietary interest." 28 U.S.C. § 451.

*Lowe v. Norfolk & W. Ry. Co.*, 529 F.Supp. 491 (S.D.Ill.1982), has two relevant holdings. It holds that federal agencies cannot remove under § 1442(a)(1). *Id.* at 493–95. In addition, it denied removal rights to a private corporation. In that case a private company, Willamette–Western Corp. d/b/a Western Environmental Service ("WES") asked for removal as a "person acting under" a federal officer pursuant to § 1442(a)(1). This was denied but not on the grounds that WES was not a natural person.

The *Lowe* court gave two reasons. Both of these show that that court was not construing "person."

First, WES was acting pursuant to private contract even though the contract was subject to federal regulations. Second, WES, by following regulations, was obeying the agency as opposed to a specific officer of the agency. *Id.* at 495. The court's need to make these distinctions at least implies it did not consider the corporate status of WES to be dispositive.

Two of plaintiffs' cases, which have only persuasive authority, do support their argument. *Gensplit Finance Corp. v. Foreign Credit Ins. Ass'n*, 616 F.Supp. 1504, 1510 (E.D.Wisc.1985), both stated and held that a non-natural person who was not a government agent could not remove under § 1442(a)(1). *Gensplit* was followed on this issue by *C.H. v. American Red Cross*, 684 F.Supp. 1018, 1023–24 (E.D.Mo.1987).

The *Gensplit* court considered the distinction between private and governmental non-natural persons illogical.

> "Certainly, if Congress did not intend to provide a right to remove under § 1442(a)(1) to federal agencies, it would have no cause to do so for private, non-individual agents of federal agencies. What logic lies in the defendant's argument?"

*Gensplit*, 616 F.Supp. at 1510.

Logically, however, Congress might wish to provide protection for those of its agents who do not have access for their defense to the governmental purse and, thus, are more easily intimidated by lawsuits.

An additional rationale is the reason mentioned in *International Primate* as to why Congress could rationally intend removal for individual officers but not agencies. The Court noted that, compared to the simplicity of a government agency's immunity defense, an officer's involved "manipulative complexities." *International Primate*, 111 S.Ct. at 1709. The same can be said of private corporations.

In support of their proposition that "person" includes non-natural parties who are not government agencies, defendants in their notice of removal cite three cases which predate *International Primate*.

*Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482 (1st Cir.1989), and *Gulati v. Zuckerman*, 723 F.Supp. 353 (E.D.Pa.1989), both allow removal by a private corporation. However, besides being merely persuasive authority, both are weak support because the removing defendants included natural persons. Furthermore, *Gulati* does not discuss the correctness of the removal; the issue may never have been raised or considered.

*Group Health Inc. v. Blue Cross Ass'n*, 587 F.Supp. 887, 890 (S.D.N.Y.1984) (Sweet, J.), held that Blue Cross Association was a person entitled to remove under § 1442(a)(1) if it met the other requirements of the statute. No natural person was an additional defendant in the suit. Judge Sweet relied on the language of the statute and on the authority of several cases with persuasive authority: *Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55, 58 (5th Cir.), *cert. denied*, 422 U.S. 1043, 95 S.Ct. 2657, 45 L.Ed.2d 694 (1975); *Kuenstler v. Occidental Life Insur. Co.*, 292 F.Supp. 532, 533 (C.D.Cal.1968); *Teague v. Grand River Dam Authority*, 279 F.Supp. 703, 705 (N.D.Okla.1968).

The only other case in this circuit cited for this issue is *Williams v. Brantley*, 492 F.Supp. 925 (W.D.N.Y.1980), *aff'd*, 738 F.2d 419 (2d Cir.1984), relied upon by defen-

dants. That case, however, does not construe "person" or "officer." It deals only with the strength of the immunity defense which must be shown to prevent remand after removal.

Defendant also relies on the Dictionary Act, 16 Stat. 431 (1871), to demonstrate that "person" in statutory construction includes corporations. Without reaching any other issues concerning the applicability of this statute, the words of the statute clearly only allow rather than require that corporations be considered persons in any particular context.

■ Accordingly, I conclude that Cross-Land is a "person" within the meaning of the statute. I turn, therefore, to the issue whether CrossLand is "acting under" an officer of the United States as required by the second sentence of 28 U.S.C. § 1442(a)(1).

*International Primate* states the antecedent of "him" in "acting under him" is the federal "officer" mentioned earlier in the sentence. *International Primate*, 111 S.Ct. at 1705–06. However, the case does not deal with the nature of the relationship between the officer and the person acting under him necessary in order to satisfy the phrase.

■ Defendants assert that they are acting under the director of the OTS. They point out that the agency's enabling act states that the instant regulations will be promulgated by the director, not by the agency. 12 U.S.C. § 1462a(b)(2); § 1464(a).

To rebut this, plaintiffs argue that § 1442(a)(1) requires public parties to be acting at the direct request of a specific federal official rather than pursuant to generally applicable regulations promulgated by an agency. This point is one of the distinctions relied upon in *Lowe*, discussed above.

However, the *Lowe* court's logic seems to ignore the facts in that case. WES was a private company hired by another private company to clean up a toxic spill. The court said WES was not acting at the behest of an officer, but of the agency itself. *Id.* at 495. However, the court also said

that the EPA was present at the site for the two months of the cleanup and "played at least a significant role in the cleanup activities." *Id.* at 493. This seems to imply that officers of the EPA were present and giving some directions.

Plaintiffs point out that many cases allowing removal deal with cases where a specific official personally ordered a specific party to take the complained of action. This statement, while true, does not show that removal is limited to such situations.

Defendant presents several cases which it argues show that pervasive regulation creates sufficient connection between the officer and the person acting under him. Most of these cases are not on point.

Defendant's strongest case is *Gurda Farms, Inc. v. Monroe County Legal Assistance Corp.*, 358 F.Supp. 841 (S.D.N.Y. 1973). In *Gurda* disgruntled farm owners sued attorneys and their employer, a county legal assistance corporation, for, *inter alia*, conspiracy to induce migrant farm workers to breach their employment agreements. The complaint relied on visits by legal assistance attorneys to the farms— visits allegedly made to help the migrant workers obtain legal services.

The defendant corporation was subject to pervasive regulations and evaluation by the Office of Economic Opportunity ("OEO") which funded legal outreach projects. The statute creating these projects gave the director of the OEO control over the projects.

*Gurda* decided that these regulations were sufficient to satisfy the requirement that the attorneys be "acting under" the control of a federal officer, here the director of the OEO. The *Gurda* court considered the appropriate analysis to be a case-by-case consideration of "to what extent defendants acted under federal direction and to what extent, as independent agents." *Id.* at 844.

*Gurda* should be considered as limited by *Knauth v. North Country Legal Svcs.*, 575 F.Supp. 897 (N.D.N.Y.1983). *Knauth*, a case against a similar legal assistance organization and its attorneys, was re-

manded to state court for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).

The *Knauth* court distinguished *Gurda* by focusing on the nexus between the regulations and the issues in the complaint. In *Knauth*, the plaintiff was an attorney who challenged the legality of his dismissal by the legal assistance organization. The *Knauth* court considered this an essentially private action even though it had been taken by an organization funded and largely regulated by the federal government.

In the case at bar, the defendant bank is clearly bound by rules extensively regulating its operation. *Fidelity Fed'l Sav. & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 145, 102 S.Ct. 3014, 3018, 73 L.Ed.2d 664 (1982) (referring to power of Federal Home Loan Bank Board whose powers were transferred to other federal officials including the Director of the OTS, 12 U.S.C. § 1462a(e)).

Two of the causes of action in the instant complaint challenge the propriety of a report allegedly required by the regulations promulgated by the director of the OTS. However, unlike *Gurda*, in which at least one of the removing defendants was an individual, here removal is sought by a corporation. A closer nexus between government and the person seeking removal appears appropriately required when removing defendant is a corporation.

*Group Health* is the only Second Circuit case cited clearly allowing removal for a "private" corporation. In that suit, the corporation had contracted to perform services usually performed by the government agency directly. It was the fiscal agent of the Department of Health and Human Services. The act complained of was the corporation's incorrect advice on whether return on a mortgage fund would be considered by HHS in setting a reimbursement rate.

*Group Health*, therefore, allows private corporations to remove only when the corporation is so intimately involved with government functions as to occupy essentially the position of an employee of the government. Government employees are the primary protected class of § 1442(a)(1). *Willingham v. Morgan*, 395 U.S. 402, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969). This, again, is a distinction made by the *Lowe* court. Defendant in this case does not have such a close relationship with the government. It is simply a corporation regulated by the government. The rule that appears to emerge from the case law is one of "regulation plus . . . .".

Furthermore, the defendant's argument is suspect because of the lack of cases clearly holding that regulated banks and other financial institutions can remove. Considering the number of such potential defendants, this lack of precedent provides some support for the position that removal is not perceived to be necessary.

The only cited cases in which a bank is the removing party are not helpful to defendant. *Texas v. National Bank of Commerce*, 290 F.2d 229 (5th Cir.1961), involved a bank on a military base. The bank removed under both § 1442(a)(1) and 28 U.S.C. § 1441(b) (federal question removal). While removal was affirmed under § 1442(a)(1), the discussion was conclusory. *Id.* at 231 ("petitions . . . showed at least a colorable claim").

More important, the defendant bank held a special relationship to the federal government because it was on a military base and was a national bank. Each such branch had a separate letter of authority from the Secretary of the Treasury which limited its functions. The letters were reviewed annually. *Id.* at 231. The federal government made up the operating deficits of the banks. *Id.* at 232.

*Texas* was followed by *First Nat'l Bank v. Bank of Bellevue*, 341 F.Supp. 960 (D.Neb.1972). The facts in *First Nat'l* were congruent to *Texas*, except that the defendant bank was organized under state law.

The *First Nat'l* court dismissed this distinction as unimportant because the special relation still existed with the Treasury. The *First Nat'l* court emphasized that this holding dealt only with banks on military bases. It distinguished the status of mere

depository banks. *Id.* at 962 (distinguishing *Branch v. United States,* 100 U.S. 673, 25 L.Ed. 759 (1879) (banks holding money of the United States on deposit are not agents of the United States)).

These cases are essentially instances of removal allowed to a corporation with an exceptionally close relationship to the government.

Furthermore, allowing removal in the circumstances of this case would clearly greatly expand the caseload of the federal courts and their intrusion on the prerogatives of state courts. Both are unwelcome outcomes.

I, therefore, conclude that CrossLand was not "act[ing] under" an officer of the United States as required by § 1442(a)(1). Since this is one of the requirements for removal, remand is appropriate. Therefore, I do not reach the other issues presented.

Therefore, for the reasons discussed above, the motion to remand is granted.

SO ORDERED.