# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60405
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

December 15, 2015

Lyle W. Cayce
Clerk

GREENWICH INSURANCE COMPANY,

Plaintiff - Appellant

v.

MISSISSIPPI WINDSTORM UNDERWRITING ASSOCIATION,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before REAVLEY, SMITH, and HAYNES, Circuit Judges.

REAVLEY, Circuit Judge:

We must decide whether, under the facts of this case, reporting deadlines imposed by the Mississippi Windstorm Underwriting Association are preempted by federal law. They are not.

The Mississippi Windstorm Underwriting Association ("MWUA") was created by Mississippi's state legislature "to provide an adequate market for windstorm and hail insurance in Mississippi's six coastal counties: George, Hancock, Harrison, Jackson, Pearl River, and Stone." *Miss. Windstorm Underwriting Ass'n v. Union Nat. Fire Ins. Co.*, 86 So.3d 216, 220 (Miss. 2012). Insurance companies offering essential property insurance in Mississippi must

No. 15-60405

be MWUA members.[1]  *Id.*  "[M]embers that voluntarily offer wind and hail coverage receive credit for each voluntary premium written."  *Id.*  At the time Hurricane Katrina hit the Gulf Coast, "MWUA had secured $175 million in reinsurance."  *Id.*  That reinsurance was woefully inadequate in the face of Hurricane Katrina, which cost MWUA more than $700 million.  *Id.*  "After the reinsurance was applied, MWUA had a $545 million loss" and "assessed its members to cover the loss."  *Id.*  Those assessments were based on premiums collected in 2003.

Plaintiff Greenwich Insurance Company ("Greenwich") is a MWUA member and also sells Multiple Peril Crop Insurance ("MPCI").  Insuring crops comes with risks of its own.  Indeed, once upon a time, "[p]rivate insurance companies apparently deemed all-risk crop insurance too great a commercial hazard," and so refused to provide such coverage.  *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3 n.1 (1947).  Accordingly, Congress created the Federal Crop Insurance Corporation ("FCIC"), a Department of Agriculture agency.  *See* 7 U.S.C. § 1503.

Thus, Greenwich is required to participate in two somewhat similar programs—one a state program, the other a federal program.  In the ordinary course, dual participation presents no problems.  Indeed, the parties agree that MWUA was not permitted to base the post-Katrina assessments on MPCI premiums collected by Greenwich.

MWUA's assessment efforts were hampered by complaints of several insurance companies that they had incorrectly reported information regarding premiums collected.  In an effort to provide its members an opportunity to ensure accurate reporting, MWUA conducted a "true-up"—*i.e.*, an opportunity

---

[1] "Insurance companies are no longer called members," *Miss. Windstorm Underwriting Ass'n*, 86 So.3d at 220 (citing Miss. Code Ann. § 83–34–3(2)), but we follow the Supreme Court of Mississippi's lead and use the term here.

to submit corrected 2003 premium data. The true-up procedure was challenged in state court and ultimately approved of by the Mississippi Supreme Court. As that Court saw it, "[t]he true-up was not an effort on behalf of MWUA to make a new rule; it was simply a remedy to the property-insurance chaos caused by Hurricane Katrina." *Mississippi Windstorm Underwriting Ass'n*, 86 So.3d at 223. The Mississippi Supreme Court further recognized that "MWUA, and any entity for that matter, must have enforceable deadlines to operate properly." *Id.* Additionally, "a change to one member's assessment would affect all other members," meaning "[t]he process would be harmed if it were to remain open for years." *Id.* at 227.

Greenwich was apparently among those insurers for which MWUA had faulty data. Nonetheless, for whatever reason, it did not take advantage of the true-up process. Instead, it repeatedly represented to MWUA that all figures were accurate. Specifically, Greenwich confirmed the contents of an annual statement showing it had collected no MPCI premiums in 2003. Based on those representations, MWUA assessed Greenwich $4.1 million.

That assessment finally prompted Greenwich to take a closer look at the reported figures. According to its brief, Greenwich "immediately began an investigation into the now decade-old data and discovered that MPCI premiums had been misclassified as assessable premiums." Relying on this alleged error, Greenwich objected to the assessment more than a year after the reporting deadline had passed. MWUA overruled the objection and enforced its deadline. Greenwich paid the assessment under protest and filed suit.

Both parties moved unsuccessfully for summary judgment, but after additional briefing, the district court certified the question of preemption for interlocutory appeal pursuant to 28 U.S.C. 1292(b). We granted permission to appeal the interlocutory order. We review *de novo* certified orders denying summary judgment. *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d

393, 397 (5th Cir. 2010) (en banc). "[O]ur appellate jurisdiction under § 1292(b) extends only to controlling questions of law, thus, we review only the issue of law certified for appeal." *Tanks v. Lockheed Martin Corp.*, 417 F.3d 456, 461 (5th Cir. 2005). The issue considered here is whether MWUA's enforcement of the true-up deadline is preempted by federal law.

While the parties agree that this case presents one discrete legal issue, they frame that issue in vastly different ways. According to Greenwich, MWUA based its assessment in part on MPCI premiums and therefore plainly violated controlling federal law. According to MWUA, there is no conflict in the law, and Greenwich is simply using preemption arguments in an attempt to escape the consequences of its own incompetence.

Under the Supremacy Clause, Congress has authority to preempt state law. *See* U.S. Const., Art. VI, cl. 2. "When a federal law contains an express preemption clause, we 'focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 131 S.Ct. 1968, 1977 (2011) (quoting *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 1737 (1993)). "The burden of persuasion in preemption cases lies with the party seeking annulment of the state statute." *AT&T Corp. v. Pub. Util. Comm'n of Texas*, 373 F.3d 641, 645 (5th Cir. 2004).

"Federal regulations can have a preemptive effect equal to that of federal laws." *O'Hara v. Gen. Motors Corp.*, 508 F.3d 753, 758 (5th Cir. 2007). To find that a federal regulation preempts state law, we must be satisfied that such preemptive effect was both intended and "within the scope of the agency's delegated authority." *First Gibraltar Bank, FSB v. Morales*, 42 F.3d 895, 898 (5th Cir. 1995). Greenwich relies on the following express preemption regulation:

No. 15-60405

> No State or local governmental body or non-governmental body shall have the authority to promulgate rules or regulations, pass laws, or issue policies or decisions that directly or indirectly affect or govern agreements, contracts, or actions authorized by this part unless such authority is specifically authorized by this part or by the Corporation.

7 C.F.R. § 400.352(a).

According to Greenwich, because enforcement of the true-up deadline means it must pay an assessment based on otherwise non-assessable MPCI premiums, the true-up deadline "directly or indirectly affect[s] MPCI" and is therefore preempted.[2]

The first question before us is whether the FCIC intended to preempt MWUA's authority to set internal administrative deadlines for its members. *See Moore*, 867 F.2d at 244.  "[T]he exact scope of the FCIC's intended preemption" is not clear from the face of the regulation.  *See Rio Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 687 (5th Cir. 2001) (holding that the preemption regulation at issue here, 7 C.F.R. § 400.352(a), does not demonstrate an intent to completely preempt the field of crop insurance regulation); *see also Alliance Ins. Co. v. Wilson*, 384 F.3d 547, 552 (8th Cir. 2004)  ("[T]he FCIA did not intend to preempt all state-based regulation of companies that sell federally reinsured crop insurance.").

"[W]hen the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77, 129 S.Ct. 538, 543 (2008) (quoting *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449, 125 S.Ct. 1788,

---

[2] Greenwich also cites 7 U.S.C. § 1511 (2012) for the proposition that MPCI is exempt from state and local taxes and 7 C.F.R. § 400.351(b)(2) and (5) for the proposition that MWUA's post-Katrina assessments could not be based on MPCI premiums.  Neither of these propositions is in dispute, and we therefore undertake no close analysis of these preemption clauses.

1801 (2005)). Given the states' "traditional role of regulating insurance," *Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 741 (5th Cir. 2015), that presumption is particularly important in this case, *see Wyeth v. Levine*, 555 U.S. 555, 565, 129 S.Ct. 1187, 1194 (2009) (explaining that the presumption against preemption applies with particular force when federal law encroaches on "'a field which the States have traditionally occupied'" (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 2250 (1996))).

We hold that the FCIC did not intend to preclude MWUA from imposing and enforcing its true-up deadline. Written to prevent state interference with MPCI, 7 C.F.R. § 400.352(a) is undoubtedly a broad preemption clause. But the interpretation urged upon us by Greenwich exceeds these textual bounds.

The challenged deadline did not directly or indirectly affect MPCI because the deadline did not trigger an assessment improperly based on MPCI premiums. Indeed, strictly speaking, even Greenwich's failure to abide by the deadline did not trigger the improper assessment. Rather, Greenwich's independent actions—specifically, its repeated affirmative statements that the 2003 premium data was correct—triggered the assessment. Greenwich reported $0 in "Multiple peril crop" premiums on its annual statement. (ROA.717.) It alleges it should have reported $4,756,021 in MPCI premiums. (ROA.675.)

Thus, "in reality," Greenwich's complaint "is directed at the actions of private parties, not the operation of" MWUA deadlines. *See New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 335 (5th Cir. 2008). Because the fault lies not with any law or rule but rather with the acts of a private third party, we cannot say that the true-up-deadline affects MPCI. *Cf. id.* at 334 ("The fatal defect in the Railroad's argument is that the Railroad fails to establish that any unreasonable interference with railroad operations is caused by operation or application of the Louisiana state law as opposed to the

independent actions of private parties."). Here, the source of Greenwich's trouble is not the acts of just *any* private parties; Greenwich's own acts are to blame. And, the actions themselves are not just any actions; they are acts of unjustifiable incompetence. The FCIC did not intend to hamstring MWUA's basic operations (or the operations of state programs like it) simply to protect inattentive insurers from their own mistakes.

AFFIRMED.