# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2022

Lyle W. Cayce
Clerk

No. 21-10477

Troy Mitchell, Individually and on Behalf of the Estate of Emma Mitchell,

*Plaintiff—Appellee*,

*versus*

Advanced HCS, L.L.C., *doing business as* Wedgewood Nursing Home; Wedgewood Rehab; Nursing GS, L.L.C.; TOM GS, L.L.C.,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-155

Before Owen, *Chief Judge*, and Clement and Engelhardt, *Circuit Judges*.

Kurt D. Engelhardt, *Circuit Judge*:

Federal courts have limited jurisdiction. We may only adjudicate cases and controversies to which the federal "judicial Power" extends. U.S. Const. art. III; *see Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372 (1978) (explaining that "Acts of Congress" likewise limit the jurisdiction of federal courts). Typically, this power does *not* extend to state-law disputes between citizens of the same state. *See* 28 U.S.C. § 1331; 28 U.S.C. § 1332.

No. 21-10477

Defendants-Appellants ask us to exercise power over such a dispute. But the trio of jurisdictional doctrines they invoke are inapplicable here, so we cannot.[1] We therefore AFFIRM the district court and REMAND with directions to further REMAND this case to state court.

I

Emma Mitchell, a resident of Wedgewood nursing home, tragically passed away in May 2020 from pneumonia, heart disease, and complications from COVID-19. Plaintiff-Appellee Troy Mitchell ("Mitchell"), son of Emma Mitchell and executor of her estate, sued Defendants-Appellants (collectively "Wedgewood") in Texas state court in December 2020. Mitchell alleged state-law causes of action for medical negligence, corporate negligence, and gross negligence. There is no dispute that both parties are citizens of Texas.

Wedgewood removed the case to federal district court. It argued that the Public Readiness and Emergency Preparedness Act ("PREP Act" or "the Act") completely preempted Mitchell's state-law claims and created federal jurisdiction, that it could remove under the federal officer removal statute, and that jurisdiction existed under the *Grable* doctrine. Mitchell moved to remand back to state court. The district court granted the motion, holding that the Act did not completely preempt Mitchell's state-law claims.

---

[1] At least two other federal Courts of Appeals have addressed near-identical arguments in near-identical cases and have likewise rejected them. In *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 400 (3d Cir. 2021), the Third Circuit held as we do here and later declined to take the case en banc. *Maglioli v. All. HC Holdings LLC*, No. 20-2833 (3d. Cir. Feb. 7, 2022). After oral argument in this case, the Ninth Circuit decided *Saldana v. Glenhaven Healthcare LLC*, --- F.4th ----, 2022 WL 518989 (9th Cir. Feb. 22, 2022), holding likewise. Although not binding on this court, we find the reasoning of our sister circuits both sound and persuasive, particularly given the similarities between those cases and this one.

No. 21-10477

*Mitchell v. Advanced HCS, LLC*, No. 4:21-CV-00155-P, 2021 WL 1247884, at *4–5 (N.D. Tex. Apr. 5, 2021). The court did not, however, address Wedgewood's alternate bases for removal. *See generally id*.

Because this appeal concerns jurisdiction alone, we review the district court's holding de novo. *Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 498 (5th Cir. 2020).

## II

We first address whether the PREP Act completely preempts Mitchell's state-law negligence claims. Generally, a defendant may only remove a case to federal court if the plaintiff could have originally filed the case there. 28 USC § 1441(a). If a dispute does not satisfy diversity jurisdiction then, subject to the "well-pleaded complaint rule," a complaint must raise a federal question to be removable. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). That federal question must be "presented on the face" of the complaint to satisfy the rule. *Id*.

Complete preemption is an exception to the well-pleaded complaint rule.[2] It creates federal jurisdiction if Congress, by statute, "completely pre-empt[s] a particular area [such] that any civil complaint raising [the] select group of claims is necessarily federal in character." *Metro. Life Ins.*, 481 U.S. at 63–64; *see GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 705 (5th Cir.

---

[2] Complete preemption should not be confused with ordinary or defensive preemption. Complete preemption gives federal courts the power to adjudicate a case in the first place, *Elam v. Kan. Cty. S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011), while defensive preemption is "an affirmative defense that a defendant can invoke 'to defeat a plaintiff's state-law claim on the merits by asserting the supremacy of federal law.'" *Spear Mktg. Inc. v. BancorpSouth Bank*, 844 F.3d 464, 467 n.3 (5th Cir. 2016) (quoting *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1261 n.16 (11th Cir. 2011)). Because defenses are not raised on the face of the complaint, defensive preemption does not create federal question jurisdiction. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

No. 21-10477

2012). That happens when a federal law creates an "exclusive cause of action" and "set[s] forth procedures and remedies governing that cause of action," such that it "wholly displaces the state-law cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

To establish complete preemption, Wedgewood must therefore show that: "(1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right;" and (3) there is a clear congressional intent that the federal cause of action be exclusive. *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008) (quoting *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000)). Once established, the question becomes whether Mitchell "could have brought" his state-law claims under the federal cause of action. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). If so, they are completely preempted.

A

Because this issue turns on the provisions of the PREP Act, we must consider those provisions.[3] The Act contains a broad grant of immunity from

---

[3] Wedgewood cites various agency documents, most notably an Advisory Opinion by the Department of Health and Human Services' Office of the General Counsel, in support of its argument that the PREP Act completely preempts state-law negligence claims. *See* Dep't of Health & Human Servs., Off. of the Gen. Counsel, Advisory Opinion 21-01 on the Pub. Readiness and Emergency Preparedness Act Scope of Preemption Provision 2–3, (Jan. 8, 2021). But agency interpretations of "[t]he scope of judicial review" are not entitled to *Chevron* deference. *Smith v. Berryhill*, 139 S. Ct. 1765, 1778 (2019); *see Texas v. EPA*, 829 F.3d 405, 417 (5th Cir. 2016) (citations omitted) (holding that this court has the exclusive power to determine its own jurisdiction and declining to afford deference); *see generally Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Nor are these interpretations entitled to *Skidmore* deference. *See generally Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). As the district court noted, the Advisory Opinion "cites no cases"

any suit "for loss[es] caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure." 42 U.S.C. § 247d-6d(a)(1). Thus, there must be a "causal relationship" between an injury and the "administration to or use by an individual of a covered countermeasure." *Id.* § (a)(2)(B). These protections only apply, however, if the Secretary of the Department of Health and Human Services (the "Secretary" of "HHS") makes a declaration through the Federal Register, identifies a current or impending public health emergency, identifies covered countermeasures, states that the immunity provision is in effect, and meets other statutory requirements in the declaration. *Id.* § (b). Courts lack jurisdiction to review any action by the Secretary in making a declaration. *Id.* § (b)(7). Likewise, declarations preempt state law. *Id.* § (b)(8).

For most who suffer an injury that falls under the immunity provision, the sole remedy is compensation from the "Covered Countermeasures Process Fund," as determined by an administrative process. 42 U.S.C. § 247d-6e(a). This is likewise an exclusive remedy. *Id.* § (d)(4). There is an exception for "death or serious physical injury proximately caused by willful misconduct." *Id.* § (d)(1). The United States District Court for the District of Columbia has exclusive jurisdiction to adjudicate these willful-misconduct claims. *Id.* § (e)(1). Generally, claimants must first exhaust the administrative remedies discussed above before going to court. 42 U.S.C. § 247d-6e(d)(1).

---

supporting its conclusion. *Mitchell*, 2021 WL 1247884, at *4. Worse still, a "growing consensus" of district courts—and the Third Circuit—rejected the agency's position. *Id.* at *2–3 (gathering cases); *see Maglioli*, 16 F.4th at 404. These documents therefore lack the "power to persuade" and we do not afford them any deference. *Cf. Skidmore*, 323 U.S. at 140.

No. 21-10477

The Act defines willful misconduct as "an act or omission that is taken intentionally to achieve a wrongful purpose; knowingly without legal or factual justification; and in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." 42 U.S.C. § 247d-6d(c)(1)(A) (cleaned up). The Act also provides that the definition of willful misconduct "shall be construed as establishing a standard for liability that is more stringent than a standard of negligence in any form or recklessness." *Id.* § (c)(1)(B).

In sum, once the Secretary promulgates a declaration, most injuries caused by a covered person administering a covered countermeasure are subject to the sole remedy of a compensation fund. There is a narrow exception for willful-misconduct claims, which proceed under an exclusive federal cause of action in the United States District Court for the District of Columbia, but only after the claimant has exhausted administrative remedies.

B

The Act does not completely preempt Mitchell's state-law negligence claims. First, the only cause of action it creates is for willful misconduct. *See* 42 U.S.C. § 247d-6e(d)(1). Assuming—without deciding—that the willful-misconduct cause of action is completely preemptive, the question is whether Mitchell "could have brought" the instant claims under that cause of action. *Aetna Health*, 542 U.S. at 210. He could not. The Act clearly states that its willful-misconduct cause of action creates "a standard for liability that is more stringent than a standard of *negligence in any form* or recklessness." 42 U.S.C. § 247d-6d(c)(1)(B) (emphasis added). Mitchell only asserts negligence causes of action. Thus, the existence of the willful-misconduct cause of action cannot completely preempt his claims. *See Maglioli*, 16 F.4th at 409–10 (concluding that the Act is completely preemptive as to willful-misconduct claims, but not as to state-law negligence claims).

Second, the compensation fund that the Act creates is not completely preemptive under this court's precedents. To begin, a "compensation fund is not a cause of action." *Id.* at 411. It may be a civil-enforcement provision, but such provisions must nevertheless "create[] a cause of action." *Gutierrez*, 543 F.3d at 252. As the Third Circuit noted, "neither the Supreme Court nor any circuit court has extended complete preemption to a statute because it created a compensation fund." *Maglioli*, 16 F.4th at 412. We decline to do so here.

Assuming arguendo that the compensation fund suffices as a cause of action, the Act nevertheless does not create "a specific jurisdictional grant to the federal courts for enforcement of the right." *Gutierrez*, 543 F.3d at 252. Instead, the Secretary oversees administration of the fund. 42 U.S.C. § 247d-6e(a–b). Worse, the statute expressly *withdraws* jurisdiction from any court, state or federal, concerning "any action [taken] by the Secretary" in doing so. *Id.* § (b)(5)(C). The Act therefore fails to meet the second prong of our complete-preemption test.

At oral argument, counsel for Wedgewood highlighted *Elam* as a case supporting complete preemption here. *Elam* is instructive, but not in the way Wedgewood imagines. That case concerned the Interstate Commerce Commission Termination Act ("ICCTA"). *Elam*, 635 F.3d at 804. The ICCTA created the Surface Transportation Board ("STB") and gave that body "exclusive federal regulatory jurisdiction" to regulate the railroads "and [created] exclusive federal remedies" for violations of those regulations. *Id.* But those exclusive federal remedies include, *inter alia*, a general remedy for damages that "may" be brought as "a complaint with the Board" *or* as "a civil action." 49 U.S.C. § 11704(c)(1). Jurisdiction over those civil actions resides with "the district courts of the United States" and "State court[s] of general jurisdiction having jurisdiction of the parties." *Id.* § (d)(1). In other words, the STB makes the rules, and an injured party can

choose whether to file a complaint with the STB or have their day in court. The plaintiff's claim in *Elam* was completely preempted because it was based on a state statute, "the effect of [which] [wa]s to economically regulate [railroad] switching operations. *Elam*, 635 F.3d at 807 (5th Cir. 2011). The ICCTA granted sole authority to do so to the STB, so that claim was completely preempted.

The plain text of the PREP Act, as discussed above, compels the opposite conclusion. Like the ICCTA, there is clear congressional intent that the prescribed remedies be exclusive. But unlike the ICCTA, the PREP Act does *not* create a general cause of action that would preempt state-law negligence claims. Nor does it contain "a specific jurisdictional grant to the federal courts" to adjudicate any such cause of action. *Gutierrez*, 543 F.3d at 252. The features of the ICCTA that make it completely preemptive are conspicuously absent in the PREP Act.

The Second Circuit's consideration of a different analogous statute is likewise instructive. *See In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005). That statute was the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA") enacted after the September 11th terrorist attacks. *Id.* at 373. Those eligible for recovery could either pursue compensation from the ATSSSA's Victim Compensation Fund or assert a statutory federal cause of action in the United States District Court for the Southern District of New York. *Id.* at 373–75. The court found that the statute's language showed a clear intent to displace state law, but it distinguished between the cause of action and the compensation fund. *Id.* at 375–76; *see Maglioli*, 16 F.4th at 412 (discussing *In re WTC* and noting that it "distinguished the cause of action from the compensation fund"). It held that the exclusive federal cause of action was completely preemptive as the statute expressly made that cause of action exclusive and conferred jurisdiction over all claims to the district court. *In re WTC*, 414 F.3d at 375–76.

No. 21-10477

Like the ATSSSA, the PREP Act creates an exclusive federal cause of action. Like the ATSSSA, the cause of action is different from the compensation fund. But the ATSSSA's cause of action is a general one that is not limited to willful misconduct. And, as the district court explained, "the ATSSSA permits a (specific) federal court to adjudicate ATSSSA claims fully on the merits under section 408 of that statute, [while] the PREP Act permits no such thing." *Mitchell*, 2021 WL 1247884, at *4. Like the ICCTA, there are material differences between the ATSSSA and the PREP Act. Those differences cut decisively against complete preemption of Mitchell's claims.

Because the compensation fund created by the Act does not satisfy this Circuit's test for complete preemption, and because Mitchell could not have brought his claims under the willful-misconduct cause of action, those claims are not completely preempted. We therefore agree with the district court and affirm its holding.

III

Wedgewood next argues that Mitchell's claims raise a significant federal issue that creates federal jurisdiction under the *Grable* doctrine. This argument falls flat.

In *Grable*, the Supreme Court recognized that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). *Grable* applies if: "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *The Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 976 F.3d 524, 529 (5th Cir. 2020) (internal quotations and citations omitted). These

9

No. 21-10477

conditions are difficult to meet. *Id.* Like most federal question doctrines, *Grable* is applied in the shadow of the well-pleaded complaint rule. *Id.* (citing *Gutierrez*, 543 F.3d at 251). Thus, the court looks to the face of a plaintiff's well-pleaded complaint to determine whether the issues it raises implicate *Grable. Id.* The category of cases that satisfy these requirements is "'special and small.'" *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721 (5th Cir. 2017) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). The type of claim that creates a federal question under *Grable* is typically a state-law claim premised on some component of federal law. For example, a negligence claim that is premised on the existence of a duty established by federal law creates a federal question. *Id.* at 722–23.

Wedgewood argues that the PREP Act's broad grant of immunity, its exclusive remedial scheme, and agency guidance documents create a significant federal issue in the context of the COVID-19 pandemic. That argument fails because the relevance of the Act's immunity provisions is defensive, as is its preemptive effect. To the extent agency action compelled Wedgewood's conduct here, Wedgewood may assert an additional preemption defense. *See Greenwich Ins. Co. v. Miss. Windstorm Underwriting Ass'n*, 808 F.3d 652, 655 (5th Cir. 2015). But when a federal issue is raised "[a]s a defense, it does not appear on the face of a well-pleaded complaint." *Metro. Life Ins.*, 481 U.S. at 63 (citation omitted). Thus, these federal issues are neither raised nor disputed on the face of the complaint, and *Grable* does not apply.

IV

Finally, Wedgewood argues that it may avail itself of the federal officer removal statute, which allows qualifying persons to "remove cases to federal court that ordinary federal question removal would not reach . . . , so long as the officer asserts a federal defense in the response" to a complaint. *Latiolais*

No. 21-10477

*v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (en banc) (discussing 28 U.S.C. § 1442(a)). The statute is construed broadly and in favor of a federal forum. *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 859 (5th Cir. 2021). "[T]o remove under section 1442(a), a defendant must show (1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions." *Latiolais*, 951 F.3d at 296. The "archetypal" case arises when a government contractor is sued. *Williams*, 990 F.3d at 859; *see, e.g., Latiolais*, 951 F.3d at 289 (contractor allegedly installed asbestos on a U.S. Navy ship at the direction of the Navy).

Wedgewood fails to satisfy the third prong of this test because it was not "act[ing] pursuant to a federal officer's directions." *Latiolais*, 951 F.3d at 296. The statute requires that a private-party defendant show that they were "acting under" a federal officer or agency. 28 U.S.C. § 1442(a)(1). "Acting under" is a broad phrase. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007). But it is not limitless. It requires that a private party have a subordinate relationship to the federal officer or agency in question. Such relationships typically involve "subjection, guidance, or control." *Id.* at 151 (citations omitted). Further, the relationship "must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152 (citations omitted). "[S]imply *complying* with the law" is not enough. *Id.*

"The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone . . . even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Id.* at 153. For example, government contractors who "go[] beyond simple compliance" by "help[ing] officers fulfill other basic governmental tasks" qualify under the statute. *Id.* at 154; *see also Maryland v. Soper (No. 1)*, 270 U.S. 9, 30 (1926) (chauffeur for prohibition

11

agents); *Davis v. South Carolina*, 107 U.S. 597, 600 (1883) (U.S. Army corporal assisting revenue agent); *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 469 (3d Cir. 2015) (nonprofit community defenders).

Wedgewood raises three principal arguments for why it was "acting under" the government and may utilize the removal statute. Each fails.

A

First, Wedgewood argues that it was designated as "critical infrastructure" and "enlisted" in the government's efforts to combat COVID-19, subjecting it to "the federal government's direction under its close supervision." Wedgewood does not, however, cite any record evidence of enlistment, direction, or close supervision. As for critical infrastructure designation, the Eighth Circuit recently rejected that argument—in persuasive fashion—in *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 739–42 (8th Cir. 2021). That case involved a food processing company which was part of an industry that had been designated "critical infrastructure"—along with the rest of the "food and agriculture" sector—under the same Presidential Policy Directive that Wedgewood invokes here. *Id.* at 739–40 (citing and discussing Presidential Policy Directive 21 – Critical Infrastructure Security and Resilience, DCPD-201300092 (Feb. 12, 2013) [hereinafter PPD-21]). But, as the Eighth Circuit noted, "[t]he 2013 list [of critical infrastructure] included sectors as broad as "'Commercial Facilities,' 'Financial Services,' and 'Healthcare.'" *Id.* at 740. It would be absurd for "mere designation of an industry as important—or even critical—[to be] sufficient to federalize an entity's operations and confer federal jurisdiction." *Id.* (citing *Maglioli*, 16 F.4th at 406).

Nor do more specific critical-infrastructure designations pursuant to PPD–21 help matters. The Third Circuit noted that such designations

include "doctors, weather forecasters, clergy, farmers, bus drivers, plumbers, dry cleaners, and many other workers." *Maglioli*, 16 F.4th at 406 (discussing Cybersecurity & Infrastructure Sec. Agency, Advisory Memorandum on Ensuring Essential Critical Infrastructure Workers' Ability to Work During the Covid-19 Response 7 (Dec. 16, 2020) [hereinafter CISA Memorandum]). These "inten[tionally] . . . overly inclusive," CISA Memorandum at 7, designations cannot suffice to "deputize all of these private-sector workers as federal officers." *Maglioli*, 16 F.4th at 406. Indeed, under Wedgewood's theory, all *lawyers* are federal officers. See CISA Memorandum at 19.

As the Third and Eighth Circuits concluded, designation of nearly the entire private economy as critical infrastructure cannot create the kind of relationship required for a private entity to utilize the federal officer removal statute. Such a broad expansion of federal jurisdiction is supported by "[n]either [the] language, nor [the] history, nor [the] purpose" of the statute. *Watson*, 551 U.S. at 153.

## B

Second, Wedgewood argues that the Centers for Disease Control and Prevention ("CDC") and the Centers for Medicare and Medicaid Services ("CMS") "engaged nursing homes in a uniquely mandated role to aid in the government's efforts." For support, Wedgewood cites numerous agency-authored documents in the record. These are unavailing. They consist of permissive guidance, publishing of best practices, helpful suggestions, or a combination thereof. They set forth aspirations and expectations, not mandates. "[V]erbiage denoting guidance, not control," is insufficient to establish the kind of relationship necessary to invoke the statute. *Maglioli*, 16 F.4th at 405 (citing *Watson*, 551 U.S. at 153). The closest any of these

documents come to any mandatory direction is the intermittent statement by CMS that it will conduct surveys "to investigate compliance" with existing regulations. But close monitoring of mere compliance is not enough. *Watson*, 551 U.S. at 153.[4] Instead, the Supreme Court has made it "clear" that the type of relationship necessary for removal "*must* involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Id.* at 152 (first emphasis added). That kind of relationship is absent here.

C

Finally, Wedgewood urges this court to adopt a "regulation plus" theory. That theory provides that comprehensive and detailed regulations alone may allow a private entity to remove under the statute. *Bakalis v. Crossland Sav. Bank*, 781 F. Supp. 140, 145 (E.D.N.Y. 1991). *Bakalis* constitutes the sum total of authority that Wedgewood cites in support of this theory and, as Wedgewood admits, *Bakalis* was decided before *Watson*. *Watson* expressly rejected any notion that "the fact of federal regulation alone" could suffice under the statute "even if the regulation is highly

---

[4] In its reply brief, Wedgewood cites a statement by CMS that calls its efforts "unprecedented targeted direction." Ctrs. for Medicare & Medicaid Servs., COVID-19 Long-Term Care Facility Guidance (Apr. 2, 2020). But by its own terms, that document is discussing "new *recommendations*" about what nursing homes and long-term care facilities "*should*" do, including "immediately ensur[ing] that they are *complying* with all CMS and CDC guidance." *Id.* (emphasis added).

Close examination of the documents that constitute this "unprecedented targeted direction" bolsters the conclusion that this statement is mere press-release puffery. These "strict infection control and other screening *recommendations*" are just that. *Id.* (emphasis added). Although the press release announcing visitor restrictions refers to the agency "direct[ing] nursing homes," the actual document does not *direct* anything. Like all the others, it merely recommends that "[f]acilities *should* restrict visitation of all visitors and non-essential health care personnel." Ctrs. for Medicare & Medicaid Servs., Guidance for Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in Nursing Homes 2 (Mar. 13, 2020) (emphasis added).

detailed and even if the private firm's activities are highly supervised and monitored." 551 U.S. at 153. Wedgewood cites no authority applying a "regulation plus" framework after *Watson*, and we decline to revive that theory.

V

At bottom, Wedgewood attempts to both transform a preemption defense into a grant of jurisdiction and recast private healthcare companies as deputies of the federal government. We reject these overtures. In doing so, we agree with the only other federal circuit courts to address these same arguments. Mitchell's state-law negligence claims will be adjudicated in state court. AFFIRMED and REMANDED with directions to further REMAND this case to the appropriate state court.