# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2022

Lyle W. Cayce
Clerk

No. 21-30718

---

ARTHUR MANYWEATHER, *Individually, on behalf of Unopened Succession of Barbara Jean McGraw*;

FELIX MANYWEATHER, *Individually, on behalf of Unopened Succession of Barbara Jean McGraw*;

KIMMIEKO MANYWEATHER, *Individually, on behalf of Unopened Succession of Barbara Jean McGraw*;

ALISON TUCKER, *Individually, on behalf of Unopened Succession of Barbara Jean McGraw*;

EMANAMI KIRK, *Individually, on behalf of Unopened Succession of Barbara Jean McGraw*;

TIMOTHY MANYWEATHER, *Individually, on behalf of Unopened Succession of Barbara Jean McGraw*;

BARBARA JEAN MCGRAW ESTATE,

*Plaintiffs—Appellees*,

*versus*

WOODLAWN MANOR, INCORPORATED, *doing business as* OAKS; LOUISIANA NURSING HOME ASSOCIATION LIABILITY TRUST,

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Western District of Louisiana
No. 3:21-CV-1317

---

Before Smith, Duncan, and Oldham, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

The Manyweathers sued a nursing home and its insurer in state court after their mother contracted COVID-19 there and died. The home, Woodlawn Manor, removed the action to federal court. After dismissing the plaintiffs' federal claims, the district court remanded to state court, declining supplemental jurisdiction over the state-law claims that remained.

Woodlawn contests that remand. It says that the state-law claims pose federal questions that the district court could and should have heard. But even if those claims did not pose federal questions, Woodlawn contends, the court should have exercised supplemental jurisdiction over them despite having dismissed all federal claims. We disagree on both fronts and affirm.

I.

The Manyweathers' state-court petition alleged that Woodlawn had "failed or refused" to act to prevent the COVID-19 disease from spreading among its residents and staff. Though its elderly residents were especially vulnerable to the virus, Woodlawn (according to the plaintiffs) dithered: It did not restrict visits or screen visitors for the disease. It did not screen residents "daily" for COVID-19 symptoms. It did not provide proper protective gear to staff. And it did not monitor sick residents to "quickly identify" those needing intensive care. Instead, the plaintiffs claimed, Woodlawn "knowingly exposed" their mother to a resident with the disease, and, when she took ill, did not "timely transfer" her to get the care she needed.

Framing their suit as a "wrongful death, loss of chance of survival, and survival action," the Manyweathers asserted that Woodlawn's negligence or gross negligence caused their mother's death. They also appeared to assert claims under the Americans with Disabilities Act ("ADA") and federal rules regarding Medicare and Medicaid.

Woodlawn removed to federal court, per 28 U.S.C. §§ 1441 and 1446,

asserting two grounds for federal jurisdiction over the state-law claims: *First*, because a federal statute, the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d-6e ("PREP Act" or "the Act"), preempted those claims, they *really* arose under federal law, *see* 28 U.S.C. § 1331; *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 3–4 (2003); *second*, even if they weren't preempted, the district court had supplemental jurisdiction to hear those claims, thanks to the Manyweathers' facially federal claims.

Woodlawn soon moved to dismiss all claims. It asserted that the plaintiffs had failed to state a claim because the PREP Act immunizes Woodlawn from liability for its pandemic response. That shield, Woodlawn acknowledged, would not apply had the plaintiffs pleaded "willful misconduct" by Woodlawn. But "to the extent" that the plaintiffs pleaded that claim, the PREP Act would require that the plaintiffs proceed before the federal district court for the District of Columbia. In that case, Woodlawn concluded, the district court should transfer or dismiss the action for improper venue.

The magistrate judge ("M.J.") urged the district court to dismiss the plaintiffs' claims under the ADA and federal Medicare and Medicaid regulations. That left "only Plaintiffs' state-law claims of negligence and gross negligence," which the M.J. advised remanding to the state court.

The M.J. first rejected Woodlawn's contention that the PREP Act transformed the plaintiffs' state-law claims into federal questions. The M.J. reasoned that the PREP Act is an immunity statute, not a substitute for state tort law, and does not grant exclusive jurisdiction to the federal courts over state-law negligence claims.

Having determined that the plaintiffs' state-law claims did not pose federal questions, the M.J. advised the district court to decline supplemental jurisdiction over those claims. No federal claim would survive dismissal, so the district court could "decline to exercise supplemental jurisdiction."

28 U.S.C. § 1367(c).  Declination was proper, the M.J. thought, because "judicial economy, convenience, fairness, and comity" favored it:  The federal proceedings had just started, so remand would not inconvenience Woodlawn.  And both federalism and comity favored allowing state courts to resolve the state-law claims.

Woodlawn objected to the proposed remand.  It urged that the Manyweathers had pleaded a willful-misconduct claim under the PREP Act—not just state-law negligence claims, as the M.J. had concluded.  Alternatively, Woodlawn requested that the district court exercise supplemental jurisdiction over the negligence claims.

The district court adopted the M.J.'s report and recommendation.  It dismissed the plaintiffs' ADA claim as well as their claims under federal Medicare and Medicaid regulations.  And it remanded the negligence claims to state court.  Woodlawn appeals.

## II.

This appeal presents two questions.

The first is whether there is federal-question jurisdiction over the state-law claims.  The district court held that there is not; we review *de novo* that jurisdictional holding.  *Reed v. Goertz*, 995 F.3d 425, 429 (5th Cir. 2021).

The second is whether the district court should have exercised supplemental jurisdiction even after dismissing all federal claims.  The court declined to do that; we review that choice for abuse of discretion.  *Heggemeier v. Caldwell County*, 826 F.3d 861, 872 (5th Cir. 2016) (per curiam).

## A.

We turn first to whether the Manyweathers' state-law claims for negligence "aris[e] under" federal law.  28 U.S.C. § 1331.  If they do, then the district court had original jurisdiction over those claims, which in turn would

mean that federal jurisdiction remained even after the court had dismissed the other federal claims.

We agree with the district court: The Manyweathers' claims do not arise under federal law, so they cannot supply original jurisdiction.

1.

The notion that state-law claims can "arise under" federal law is not intuitive. State questions are not federal questions. Even where a plaintiff brings state-law claims that implicate federal law, those claims cannot alone sustain federal jurisdiction. A defendant cannot remove an action to federal court unless the plaintiff pleaded a federal question on the face of his complaint. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 153–54 (1908). That principle is known as the well-pleaded-complaint rule. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

This case concerns a "corollary" to that rule, *id*.: Even where the complaint contains only a state-law claim, federal-question jurisdiction exists if Congress has created an "exclusive cause of action," "procedures," and "remedies" that "wholly displace[ ] th[at] state-law cause of action." *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 585 (5th Cir. 2022) (quoting *Anderson*, 539 U.S. at 8). In other words, a state-law claim may raise a federal question if Congress has "so completely preempted" that legal area "that any civil complaint raising" the state-law claim "is necessarily federal in character." *Metro. Life*, 481 U.S. at 63–64 (cleaned up).

The complete-preemption corollary is narrow. It can apply only where three conditions are met: *First*, federal law "creates a cause of action that both replaces and protects the analogous area of state law." *Mitchell*, 28 F.4th at 585 (citation omitted). *Second*, Congress has empowered federal courts to hear that cause of action. *Ibid*. *Third*, Congress clearly intended that grant of jurisdiction to be exclusive. *Ibid*. Once those conditions are met, the party

invoking federal jurisdiction must show that the plaintiff "could have brought his state-law claims under th[at] federal cause of action." *Ibid.* (citation omitted).

### 2.

Woodlawn contends that the PREP Act completely preempts the state-law claims. The Act shields covered persons, "such as pharmacies and drug manufacturers," from suits and liability "during a public-health emergency." *Est. of Maglioli v. All. HC Holdings, LLC*, 16 F.4th 393, 400 (3d Cir. 2021). "The Act lies dormant until invoked by the Secretary of the Department of Health and Human Services . . . ." *Ibid.* "If the Secretary deems a health threat a public-health emergency, he may publish a declaration in the Federal Register recommending certain 'covered counter-measures'"—such as vaccines and treatments. *Ibid.* (quoting 42 U.S.C. § 247d-6d(b)(1)). The PREP Act's liability shield extends only to "the administration . . . or the use" of those "covered countermeasures." 42 U.S.C. § 247d-6d(a)(1). If the shield applies, "the sole remedy is compensation" from a fund administered by the Secretary. *Mitchell*, 28 F.4th at 586; *see also* 42 U.S.C. § 247d-6e(b).

The Act states only one exception to its liability shield: A claimant may sue "a covered person for death or serious physical injury proximately caused by [that person's] willful misconduct." 42 U.S.C. § 247d-6d(d)(1). But that exception is substantively narrow. "The term 'willful misconduct' . . . denote[s] an act or omission that is taken (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." § 247d-6d(c)(1)(A). Willful misconduct is a "more stringent" standard of liability than is "recklessness" or any "standard of negligence." § 247d-6d(c)(1)(B).

No. 21-30718

The exception also is procedurally narrow. Willful-misconduct claims may proceed only in the federal district court for the District of Columbia. § 247d-6d(e)(1). Plaintiffs must satisfy strict standards of pleading[1] and proof[2]; there are special limits on damages[3]; and defendants may immediately appeal orders denying motions for dismissal or summary judgment.[4]

3.

Woodlawn urges this court to read the state-court petition as asserting state-law negligence claims and claims for willful misconduct under the Act. Woodlawn says that the PREP Act completely preempts both kinds of claims, so we should reverse the judgment remanding to state court.

We instead affirm—for two reasons. *First*, this court has held that the PREP Act does not preempt state-law negligence claims. *Second*, the Many-weathers did not plead willful-misconduct claims. But even if they had, they could not have brought them under the Act.

a.

We turn first to the threshold problem: We already have decided that the PREP Act does not preempt state-law negligence claims. Yet those are what our plaintiffs pleaded. Those claims cannot confer original federal jurisdiction.

*Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580 (5th Cir. 2022), pre-sented nearly identical facts. After a nursing-home resident died from

---

[1] § 247d-6d(e)(3), (4).

[2] § 247d-6d(c)(3) ("[T]he plaintiff shall have the burden of proving by clear and convincing evidence willful misconduct by each covered person sued and that such willful misconduct caused death or serious physical injury.").

[3] *E.g.*, § 247d-6d(e)(7), (8).

[4] § 247d-6d(e)(10).

No. 21-30718

COVID-19, her son sued the home in state court, alleging negligence and gross negligence. *Id.* at 584. The home removed to federal court, theorizing that the PREP Act completely preempted the son's claims.

The court rejected that contention. We first noted that the PREP Act does not create a cause of action for negligence—only for willful misconduct, a "more stringent" standard for liability. *Id.* at 586 (citation omitted). The home thus had not identified a "cause of action that both replaces and protects" the state law of negligence. *Id.* at 585 (citation omitted). Though the son conceivably could have resorted to the PREP Act's compensation fund, that fund, we observed, "is not a cause of action." *Id.* at 587 (quoting *Maglioli*, 16 F.4th at 411). Even if it were, Congress has denied us power to review how the Secretary administers the fund. *Id.* (citing 42 U.S.C. § 247d-6e(b)(5)). And complete preemption can't exist unless the federal courts have been granted jurisdiction over the purportedly preempted claims. *See id.* at 585.

"[T]he PREP Act," we concluded, "does *not* create a general cause of action that would preempt state-law negligence claims. Nor does it contain 'a specific jurisdictional grant to the federal courts' to adjudicate any such cause of action." *Id.* at 587 (quoting *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008)). Absent those features, the Act could not preempt the *Mitchell* plaintiff's claims.

The same holds here. The Manyweathers asserted state-law claims for negligence. Under *Mitchell*, the PREP Act does not preempt those claims, so they cannot support original federal jurisdiction.

b.

Though acknowledging that *Mitchell* governs the negligence claims, Woodlawn asserts that the plaintiffs also pleaded a willful-misconduct claim. The Act preempts that claim, Woodlawn says, so the district court had orig-

inal jurisdiction to dismiss the action or to transfer it to the federal district court for the District of Columbia, where willful-misconduct actions belong. We disagree.

Recall that the PREP Act strictly defines willful misconduct, which consists, under the Act, of "act[s] or omission[s] that [are] taken (i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; *and* (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." 42 U.S.C. § 247d-6d(c)(1)(A) (emphasis added). The state-court petition does not suggest that the Manyweathers "could have brought" or meant to bring a willful-misconduct claim. *See Mitchell*, 28 F.4th at 586. The petition expressly asserts negligence causes of action and pleads violations of the ADA and federal Medicare and Medicaid rules.

Woodlawn tries to wring a willful-misconduct claim from one sentence of the petition, which states that the plaintiffs' "mother . . . was knowingly exposed to coronavirus" at Woodlawn Manor. But a defendant's knowledge is only *part* of proving willful misconduct under the Act. And "nowhere" in their petition "do the [plaintiffs] allege or imply that [Woodlawn] acted 'intentionally to achieve a wrongful purpose.'" *Maglioli*, 16 F.4th at 411 (citation omitted). Instead, the plaintiffs allege that Woodlawn's "gross negligence and failure to provide the most basic level of care to safeguard its residents' health . . . ultimately resulted in [their] mother's death." That assertion, repeated throughout the petition, sounds in negligence, not willful misconduct.

Finding little support in the state-court petition, Woodlawn also invokes the plaintiffs' reply to its motion to dismiss. There, the plaintiffs did maintain that their petition should survive dismissal because it asserted willful-misconduct claims under the Act. But that reply is irrelevant. What

matters is what the *petition* said, and the petition did not advance that theory. Just as a plaintiff cannot defeat a motion to dismiss by advancing unpleaded facts or theories, *see Ibe v. Jones*, 836 F.3d 516, 524 n.6 (5th Cir. 2016), a defendant cannot invoke unpleaded matters to establish federal-question jurisdiction.[5]

But let's suppose that Woodlawn is right:  The plaintiffs did mean to plead a willful-misconduct claim, and the Act's cause of action for willful misconduct does satisfy the requisites of complete preemption.[6]  In that event, Woodlawn still would need to show that the plaintiffs "could have brought" their willful-misconduct claim under the PREP Act.  *Mitchell*, 28 F.4th at 585 (citation omitted).  And Woodlawn has not shown that.

The PREP Act shields covered persons "from suit or liability . . . with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure."    42 U.S.C. § 247d-6d(a)(1).   Lest that provision be read too broadly—the curbstone philosopher's theory of relation comes to mind[7]— the Act clarifies that it covers "any claim for loss that has a causal relationship with the administration . . . or use" of a covered countermeasure.  § 247d-6d(a)(2)(B).  But the Manyweathers do not allege loss caused by the "administration" or "use" of COVID-19 countermeasures.  They instead assert that Woodlawn's *failure* to administer or use those countermeasures caused their

---

[5] *Cf. Willy v. Coastal Corp.*, 855 F.2d 1160, 1165 (5th Cir. 1988) ("In cases removed to federal court, the plaintiff's well-pleaded complaint, not the [defendant's] removal petition, must establish that the case arises under federal law.").

[6] We reserved that question in *Mitchell*, 28 F.4th at 587, and again reserve it here.

[7] *Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring) ("[A]pplying the 'relate to' provision [of ERISA] according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else.").

mother's death.

We don't rule out that a failure to use a covered countermeasure *could* relate to its use or administration. For example, a lifesaving drug could be in limited supply, forcing a covered healthcare provider to choose who may live or die. But our plaintiffs do not protest the "[p]rioritization or purposeful allocation of a Covered Countermeasure."[8] Instead, they complain that Woodlawn did not deploy those measures at all. Taking as true what the plaintiffs allege, we cannot say that they assert willful misconduct *under the Act*, even if they do assert willful misconduct of some kind. *Cf. Aetna Health Inc. v. Davila*, 542 U.S. 200, 211–14 (2004).

None of that means that Woodlawn is not entitled to immunity under the PREP Act. It may be; the state court will have the option to decide that question on remand. Likewise, we do not opine on the merits of the plaintiffs' claims or the truth of their allegations. All we decide is whether the state-law claims pose federal questions. And because the plaintiffs' factual allegations, taken as true, do not state and could not support a willful-misconduct claim under the Act, there is no federal question here.

## B.

No federal question remains in this case. So Woodlawn's only hope to stay in federal court is supplemental jurisdiction. That hope is slim. A district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). That describes this case, but Woodlawn says that the district court abused its discretion.

---

[8] Fourth Amendment to the Declaration Under the PREP Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 79190, 79197 (Dec. 9, 2020).

That contention lacks merit.  We test a remand under subsection (c)(3) by assessing the common-law factors of "judicial economy, convenience, fairness, and comity." *Heggemeier*, 826 F.3d at 872 (citation omitted).  Applying those factors, we've held that a court generally "should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Ibid.* (cleaned up).  So here.  The district court remanded during the pleading stage.  No discovery had taken place.  Any trial was a distant possibility—months, if not years away—if it would happen at all.  The court did not abuse its discretion by remanding.

Woodlawn again urges that this case is different because the plaintiffs "invoke the type of intentional and willful conduct for which the PREP Act provides a federal cause of action."  On that ground, Woodlawn contends that this case implicates questions of federal policy, not of state law.  But we already have rejected that position.  The state-court petition no longer states any federal claims, but only negligence claims under Louisiana law.  Those claims belong in state court.

The judgment of remand is AFFIRMED.