**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 14, 2025**

# In the Court of Appeals of Georgia

A24A1404. KENNESTONE HOSPITAL, INC. v. TURNER.

GOBEIL, Judge.

In this case, Kennestone Hospital, Inc. (the "Hospital") asserts that the trial court erred in failing to dismiss Gregory Turner's medical malpractice action that arises out of actions taken by Hospital personnel after he was admitted for symptoms related to COVID-19 in November 2021. The issues on appeal concern whether the Hospital is immune from Turner's suit based on (1) the Georgia COVID-19 Pandemic Business Safety Act, OCGA § 51-16-1 et seq. (the "GCPBSA"), and/or (2) the federal Public Readiness and Emergency Preparedness Act, USC §§ 247d-6d, 247d-6e (the "PREP Act"). For the reasons set forth below, we find that Turner's complaint was due to be dismissed, and thus reverse the judgment of the trial court.

This Court reviews de novo a trial court's ruling on a motion to dismiss for failure to state a claim, "construing the pleadings in the light most favorable to the plaintiff and with any doubts resolved in the plaintiff's favor," *Babalola v. HSBC Bank, USA*, 324 Ga. App. 750, 750 (751 SE2d 545) (2013) (citation and punctuation omitted), and viewing all well-pled allegations in the complaint as true, *Carter v. Cornwell*, 338 Ga. App. 662, 662 (791 SE2d 447) (2016).

So viewed, the record shows that Turner was admitted to the Hospital and diagnosed with COVID-19 on November 7, 2021. As part of his treatment, he was prescribed anticoagulants, including the medication Heparin, on November 15, 2021. The medication was ordered at 7:53 a.m., and an infusion of Heparin began ten minutes later at 8:03 a.m. Due to COVID-related acute thrombosis in his lower limbs, he underwent a bilateral lower extremity surgical procedure that afternoon. The surgery was deemed a success by the surgical team.

Hospital staff failed to restart the Heparin infusion after Turner's surgery. According to Turner, the staff discovered the oversight on the morning of November 16, 2021, at which time pulmonologist Vineet Reddy, M. D., ordered "high dose heparin" to be restarted, noted that Turner's right lower extremity was "not

2

salvageable," and began to plan for an amputation of Turner's right leg above the knee. Turner's leg was amputated that same day.

On November 3, 2023, Turner filed the instant action, alleging medical negligence by the clinical staff at the Hospital,[1] and imputed liability for the Hospital. Turner alleged that the Hospital staff was negligent for failing to: (a) be aware of the existing order for the Heparin infusion; (b) have procedures in place to ensure the nursing staff would carry out the medication orders; (c) adhere to the order for the Heparin infusion and start the infusion after the November 15 surgery; and (d) discover for over 12 hours that Heparin was not being administered as ordered. Turner alleged that as a result of this negligence, he sustained injuries including the loss of his right leg, pain and suffering, medical expenses, special damages such as lost wages, and permanent partial disability.

The Hospital filed a motion to dismiss the complaint, asserting that it was immune from liability under the GCPBSA and the PREP Act. As for the GCPBSA, the Hospital argued that the state law immunized it from Turner's COVID-19 liability

---

[1] Turner initially sued Wellstar Health System, Inc. d/b/a Wellstar Kennestone Hospital, but the court later granted a consent motion to substitute the Hospital as the proper defendant.

claim unless he could show that its actions involved gross negligence, willful and wanton misconduct, reckless infliction of harm, or intentional infliction of harm, OCGA § 51-16-2 (a), which he had not alleged. As for the PREP Act, the Hospital argued that the federal law immunized it from Turner's claims because the acts underlying the medical malpractice claim were related to the administration and use of a "covered countermeasure" during a public health emergency, 42 USC § 247-6d (a) (1). Shortly thereafter, Turner amended his complaint to add allegations of gross negligence by Hospital staff for failing to administer Heparin overnight on November 15, 2021, despite an order for the medication.

The trial court denied the Hospital's motion to dismiss. First, the trial court found that the Hospital's argument that Turner had not alleged gross negligence in order to circumvent the GCPBSA was mooted by Turner's amended complaint. Second, the trial court determined that the Hospital's claim for immunity under the PREP Act failed because Turner's cause of action arises not from the administration of a covered countermeasure, but from the *failure to administer* a countermeasure. The court subsequently certified its order for immediate review, and we granted the

4

Hospital's application for interlocutory appeal. Court of Appeals Case No. A24I0128 (Feb. 29, 2024)

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof, and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

*Hendon Properties v. Cinema Dev.*, 275 Ga. App. 434, 435 (620 SE2d 644) (2005) (citation and punctuation omitted).

1. On appeal, the Hospital argues that Turner's amended complaint did not state facts sufficient to support a claim for gross negligence such that it could overcome the immunity laid out in the GCPBSA. We agree.

The GCPBSA provides, in relevant part:

No healthcare facility, healthcare provider, entity, or individual shall be held liable for damages in an action involving a COVID-19 liability claim against such healthcare facility, healthcare provider, entity, or individual,

5

unless the claimant proves that the actions of the healthcare facility, healthcare provider, entity, or individual showed gross negligence, willful and wanton misconduct, reckless infliction of harm, or intentional infliction of harm.

OCGA § 51-16-2 (a).[2]

Gross negligence is defined as the failure to exercise that degree of care that every man of common sense, however inattentive he may be, exercises under the same or similar circumstances; or lack of the diligence that even careless men are accustomed to exercise. In other words, gross negligence has been defined as equivalent to the failure to exercise even a slight degree of care or lack of the diligence that even careless men are accustomed to exercise.

*Heard v. City of Villa Rica*, 306 Ga. App. 291, 294 (1) (701 SE2d 915) (2010) (citations and punctuation omitted); accord OCGA § 51-1-4. "[M]erely acting in a way that no prudent person would is negligence, but absent a greater deviation from ordinary care beyond that which even careless people observe, the conduct does not meet the gross

---

[2] The parties do not appear to dispute that Turner's complaint asserts a "COVID-19 liability claim," which is defined as a cause of action for "[a]cts or omissions by a healthcare facility or healthcare provider in arranging for or providing healthcare services or medical care to the claimant resulting in injury or death of the claimant for COVID-19[.]" OCGA § 51-16-1 (3) (B).

negligence standard." *Arbor Mgmt. Svcs. v. Hendrix*, 364 Ga. App. 758, 768 (2) (875 SE2d 392) (2022) (citation and punctuation omitted).

"(Q)uestions of negligence and diligence, even of gross negligence and slight diligence, usually are matters to be determined by the jury, but in plain and indisputable cases the court may solve the question as a matter of law." *Arbor Mgmt. Svcs.*, 364 Ga. App. at 765 (2) (citation and punctuation omitted). To determine whether a complaint sufficiently alleges gross negligence for purposes of immunity under the GCPBSA, this Court "look[s] only to the conduct alleged in the complaint, not the plaintiffs' legal characterization of it as grossly negligent"; this Court is "under no obligation to adopt a party's legal conclusions based on the facts." Id. at 766 (2) (citation and punctuation omitted).

Here, Turner claims that he was injured as a result of Hospital personnel's failure to restart his Heparin infusion for more than twelve hours following his leg surgery. In the count for "gross negligence" added in the amended complaint, he further alleged as follows:

35.

[Turner] shows that the failure to give the [H]eparin over the night of
November 15-16, 2021 was so egregious that the medical record states

that on November 16, 2021, one of [Turner]'s physicians contacted hospital risk management and that the staff filed SAFER reports.[3]

36.

In the care and treatment of Mr. Turner, [Hospital] clinical staff was grossly negligent by failing to exercise even slight care and diligence as follows:

> a) By completely failing to be aware of an existing order for Heparin infusion;

> b) By completely failing to adhere to an existing order for Heparin infusion and failing to start the administration of Heparin infusion to Mr. Turner after the November 15, 2021 surgery; [and]

> c) By completely failing for over twelve hours during the evening of November 15, 2021 and through the night to the morning of November 16, 2021 to discover that the ordered Heparin was not being administered to Mr. Turner.

Here, given the sparse allegations of the complaint, the failure to restart the

Heparin infusion may constitute simple negligence, but does not rise to the level of

---

[3] The amended complaint does not explain what a "SAFER report[]" is or why it would bring Hospital staff's actions into the gross negligence category.

"the failure to exercise even a slight degree of care or lack of the diligence that even careless men are accustomed to exercise." *Heard*, 306 Ga. App. at 294 (1) (citation and punctuation omitted).

In our only published case addressing the gross negligence exception to immunity provided under the GCPBSA, the plaintiffs sued a senior citizens' residential facility after a family member died from COVID-19 she contracted while living at the center. *Arbor Mgmt. Svcs.*, 364 Ga. App. at 758. The plaintiffs alleged that the defendant residential center was negligent for failing to enforce outside visitation restrictions, social distancing, and masking and quarantine protocols, which allowed their family member to contract the virus. Id. at 759. The amended complaint alleged gross negligence, asserting "a want of even slight care and diligence" on the part of the residential facility. Id. at 760. The trial court granted the defendant's motion to dismiss, and we reversed on appeal. Id. at 760-761, 768 (2). We concluded that the facility's actions in failing to diligently and strictly respond to the emerging public health emergency, although demonstrating "a belatedness or lack of urgency in its response," did not demonstrate "the total absence of even a slight amount of common sense that typifies gross negligence." Id. at 768 (2). Accordingly, the complaint's

9

characterization of these actions as gross negligence was immaterial, and we reversed the trial court's judgment denying the motion to dismiss. Id.

Likewise, we find Turner's amended complaint to be lacking allegations sufficient to demonstrate the kind of actions that could constitute gross negligence by the Hospital personnel. Taking Turner's allegations as true (as we must do at this stage of the proceedings), Hospital staff overlooked an order for an important medication, and restarted it upon discovery of the error. There is nothing in the complaint to support the theory that Hospital staff intentionally failed to treat Turner or ignored signs that his condition was deteriorating, or demonstrated an absence of *any* care or diligence. Turner relies on *Abdel-Samed v. Dailey*, 294 Ga. 758, 765-766 (3) (755 SE2d 805) (2014), in support of his argument that the Hospital could be found to have been grossly negligent by failing to adhere to a critical order for medication for over 12 hours. He correctly states that, in *Abdel-Samed*, the Supreme Court of Georgia "held that a physician's failure to transfer a patient's care to a hand surgeon for over five hours was sufficient evidence from which a jury could find gross negligence." Id. However, in that case, there was evidence that the physician in question knew the patient needed emergency surgery and was specifically aware that a surgeon was

10

available and willing to take a case, yet the hospital staff did not contact that surgeon or follow their own protocols to seek out another available surgeon nearby. Id. In contrast to *Abdel-Samed*, here, Turner does not allege that any of the Hospital staff who failed to restart the Heparin knew that they needed to do so. Nor does Turner allege that those staff members ignored any warning signs in the patient that a person exercising some diligence would have noticed. In other words, Turner alleges conduct that may constitute inattentiveness or negligence, but not that supports "that degree of care that every man of common sense, *however inattentive he may be*, exercises under the same or similar circumstances; or lack of the diligence that even careless men are accustomed to exercise." *Heard*, 306 Ga. App. at 294 (1) (citation and punctuation omitted; emphases supplied).

And, although not worthy of dismissal of Turner's case on their own, the expert affidavits filed along with Turner's complaint do not offer any additional support for his gross negligence theory, as they allege mere "deviat[ions] from the standard of care," as he did not amend or supplement his expert affidavits after amending his complaint. Compare *Graham v. Reynolds*, 343 Ga. App. 274, 280-281 (3) (807 SE2d 39) (2017) (complaint and expert affidavit stated facts sufficient to support a claim of

11

gross negligence where emergency room doctor sent patient home despite her electrocardiogram showing that she was suffering from "a serious cardiac condition requiring immediate intervention"; the fact that expert affidavit did not specifically opine that the conduct constituted gross negligence was not fatal to the action).

In sum, the only support for Turner's gross negligence (as opposed to negligence) claims are mere conclusory allegations.[4] Accordingly, we find that Turner's complaint shows with certainty that he would not be able to prevail given the immunity granted to medical institutions for COVID-19 claims under the GCPBSA. We therefore reverse the trial court's denial of the Hospital's motion to dismiss.

2. Given our conclusions in Division 1, we need not address the Hospital's other enumeration of error concerning the federal PREP Act.

*Judgment reversed. Pipkin, J., concurs in judgment only and Barnes, PJ., dissents.*

---

[4] This case is not a typical medical malpractice case. The bar for liability is higher because the legislature specifically decided to raise the bar and provide limited liability protection to hospitals treating COVID patients. Though in the context of a different statute, OCGA § 51-1-29.5 (c), the Supreme Court of Georgia noted that "this is one of those cases in which the General Assembly has placed a higher evidentiary burden on plaintiffs" to show that the departure from accepted standards of care must rise to the level of gross negligence. *Johnson v. Omondi*, 294 Ga. 74, 75 (751 SE2d 288) (2013). Here, it appears that the plaintiffs drafted the complaint to support claims of simple negligence. Had the complaint included substantive (versus conclusory) allegations of gross negligence, we might be looking at a different result.

12

A24A1404.  KENNESTONE HOSPITAL, INC. v. TURNER.

BARNES, Presiding Judge, dissenting.

Gregory Turner's amended complaint and accompanying expert affidavits alleged that hospital clinical staff failed to carry out a physician's order to administer a critical medication to him for over 12 hours after his leg surgery, during which time massive tissue death occurred, even though the order was clearly entered in Turner's medical records and the staff had a duty to be aware of what medications had been ordered and to administer them. Based on these allegations, the trial court properly

concluded that, at this stage of the proceedings, Kennestone Hospital ("Hospital") was not entitled to immunity from state medical malpractice liability under the Georgia COVID-19 Pandemic Business Safety Act, OCGA § 51-16-1 et seq. ("GCPBSA") or the federal Public Readiness and Emergency Preparedness Act, 42 USC §§ 247d-6d ("PREP Act").  And because the Hospital was not entitled to state or federal immunity, the trial court did not err in denying the Hospital's motion to dismiss Turner's amended complaint for failure to state a claim.  In light of the majority's conclusion otherwise, I respectfully dissent.

While a trial court's decision on a motion to dismiss for failure to state a claim is subject to de novo review, "we accept the allegations of fact that appear in the complaint and view those allegations in the light most favorable to the plaintiff." (Citation and punctuation omitted.) *McLeod v. Costco Wholesale Corp.*, 369 Ga. App. 717, 718 (894 SE2d 442) (2023).  As explained by our Supreme Court:

> The well-established test that must be satisfied before a motion to dismiss can be granted is a demanding one: A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence

2

within the framework of the complaint sufficient to warrant a grant of the relief sought.

(Citations, punctuation, and footnote omitted.) *Norman v. Xytex Corp.*, 310 Ga. 127, 130-131 (2) (848 SE2d 835) (2020). "A complaint need only give fair notice of the claim," id. at 138 (2) (e), and "[u]ltimately, any doubts regarding the complaint must be construed in favor of the plaintiff." (Citation and punctuation omitted.) *McLeod*, 369 Ga. App. at 718. Similarly, an expert affidavit filed with a complaint pursuant to OCGA § 9-11-9.1 must be construed most favorably to the plaintiff with all doubts resolved in his favor, and for the complaint to be dismissed for failure to state a claim, "the affidavit must disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts." (Citation and punctuation omitted.) *Graham v. Reynolds*, 343 Ga. App. 274, 280 (3) (807 SE2d 39) (2017). "[R]elevant factual evidence which may or may not be developed during discovery can be considered on a subsequent motion for summary judgment." (Citation and punctuation omitted.) *McLeod*, 369 Ga. App. at 725 (5). Guided by these principles, I turn to the specific claims of immunity in this case.

1. *Immunity under the GCPBSA*. Whether the Hospital is immune from liability under the GCPBSA turns on whether Turner's amended complaint shows with

3

certainty that he would be unable to prove that Hospital clinical staff were grossly negligent in the medical treatment provided to him after his leg surgery. See OCGA § 51-16-2 (a).[1] "[G]ross negligence has been defined as equivalent to the failure to exercise even a slight degree of care." (Citations and punctuation omitted.) *Ga. Trails & Rentals v. Rogers*, 359 Ga. App. 207, 217 (3) (c) (855 SE2d 103) (2021). Put another way, "gross negligence" means "the failure to exercise that degree of care that every man of common sense, however inattentive he may be, exercises under the same or similar circumstances; or lack of the diligence that even careless men are accustomed to exercise." (Citation and punctuation omitted.) Id. Whether conduct constitutes gross negligence is for the jury to resolve except in plain and undisputable cases. *Arbor Mgmt. Svcs. v. Hendrix*, 364 Ga. App. 758, 765 (2) (875 SE2d 392) (2022).

The present case is not one of those plain and undisputable cases. The complaint, as amended, alleged that on November 7, 2021, Turner was admitted to

---

[1] OCGA § 51-16-2 (a) provides:

> No healthcare facility, healthcare provider, entity, or individual shall be held liable for damages in an action involving a COVID-19 liability claim against such healthcare facility, healthcare provider, entity, or individual, unless the claimant proves that the actions of the healthcare facility, healthcare provider, entity, or individual showed gross negligence, willful and wanton misconduct, reckless infliction of harm, or intentional infliction of harm.

the Hospital for shortness of breath and was diagnosed with COVID-19. Over the ensuing days of his hospitalization, Turner's condition worsened as he developed serious complications of COVID-19, including emboli and blood clots in his lower extremities. As part of his treatment, Turner was prescribed the anticoagulant Heparin, which was administered by means of infusion beginning on the morning of November 15. That afternoon, Turner underwent "successful" leg surgery for COVID-19-related complications, but, according to Turner's expert vascular surgeon, "a post-operative continuous flow of [H]eparin was critical to the viability" of Turner's leg. Nevertheless, despite the preexisting order for Heparin infusion clearly reflected in Turner's medical records, Hospital clinical staff failed to restart the infusion until over 12 hours had elapsed after the surgery. By the time that the clinical staff discovered the next morning that Heparin was not being administered and restarted the infusion, Turner had "obvious rigor in [his] right leg with frankly dead muscle visible in the fasciotomy incisions and [his] foot [was] locked in plantar flexion," such that the leg was "not salvageable" and had to be amputated above the knee.

According to the affidavit of Turner's nurse expert attached to the complaint, it was "the responsibility of the nursing staff to be aware of, adhere to and carry out

physicians' orders for the administration of medications to their patients" and "to be aware whether patient medication orders are active, suspended or discontinued," but the nursing staff breached those duties. Similarly, in her affidavit attached to the complaint, Turner's expert in general and vascular surgery averred that the Hospital clinical staff, including the floor and charge nurses, deviated from the applicable standard of care by failing to be aware of the existing order for Heparin, failing to administer the Heparin after the surgery, and failing for over 12 hours to discover that Heparin was not being administered.

Viewing the amended complaint and accompanying expert affidavits in the light most favorable to Turner, with all inferences and doubts construed in his favor, I cannot say that they disclose with certainty that Turner would be unable to show that the Hospital clinical staff was grossly negligent. According to the amended complaint and attached expert affidavits, the Hospital clinical staff — despite having a duty to ascertain what medications had been ordered for Turner and carry out those orders — failed to restart the Heparin infusion ordered for Turner or discover that it needed to be restarted until over 12 hours after his surgery, even though the order was readily ascertainable from Turner's medical records. Furthermore, the amended complaint, construed in Turner's favor, alleged that by the time the failure to restart the infusion

6

was discovered the next morning, Turner was suffering signs of massive tissue death that were obvious upon inspection. "[W]hen facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable men as to . . . whether in degree the negligence amounts to gross negligence, the right to draw the inference is within the exclusive province of the jury." (Citation and punctuation omitted.) *Ga. Trails & Rentals*, 359 Ga. App. at 217 (3) (c). Given the procedural posture of this case, and in light of the admonition that we must resolve all inferences and doubts in Turner's favor, I believe that the amended complaint sufficiently alleged conduct by the Hospital clinical staff that could reasonably be viewed as grossly negligent. See *Abdel-Samed v. Dailey*, 294 Ga. 758, 765-767 (3) (755 SE2d 805) (2014) (evidence that emergency room physician waited hours to contact and transfer patient for emergency hand surgery raised jury question as to whether physician was grossly negligent); *Lowndes County Health Svcs. v. Copeland*, 352 Ga. App. 233, 241 (3) (834 SE2d 322) (2019) (evidence of "egregious" violations of the standard of care, combined with delay in treatment, would support finding of gross negligence). Accordingly, the trial court properly concluded that the Hospital was not immune from liability under the GCPBSA at this early stage of the proceedings.

7

In reaching the opposite conclusion, the majority relies on *Arbor Management Services,* 364 Ga. App. 758, but that case is plainly distinguishable. In *Arbor Management Services,* one of the questions raised on appeal was whether allegations that an assisted living facility failed to carry out certain COVID-19 mitigation strategies were sufficient to allege gross negligence so as to overcome the facility's immunity under the GCPBSA. Id. at 765-768 (2). In answering that question in the negative, we emphasized that "the early days of the pandemic were marked by uncertainty and incomplete scientific understanding of the novel virus and its behavior, and any mitigation strategies were unsettled and unfamiliar." Id. at 767-768 (2). We went on to conclude that the allegations in the complaint, which demonstrated "an under-response or a temporary continuation of normal activity" by the facility, "all occurring at the time of uncertainty during the first days of the pandemic in Georgia," were insufficient to show gross negligence. Id. at 768 (2). The present case, however, does not involve unsettled, unfamiliar, or uncertain questions regarding protocols or treatment. Rather, as reflected in the amended complaint and accompanying expert affidavits, this case is about the failure to follow a physician's unambiguous order to give a medication to a post-surgery patient and then not

8

discover that failure for over 12 hours. Under these circumstances, *Arbor Management Services* is not controlling.

2. *Immunity under the PREP Act.* The Hospital contends that Turner's complaint nevertheless should have been dismissed because his claim arose from the administration or use of a COVID-19 countermeasure, rendering the Hospital immune from liability under the federal PREP Act. I do not agree.

The PREP Act "provides immunity from federal and state law claims relating to the administration of certain medical countermeasures during a declared public health emergency." *Cannon v. Watermark Retirement Communities*, 45 F4th 137, 138 (D.C. Cir. 2022). The PREP Act provides that

> a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) [by the United States Secretary of Health and Human Services ("HHS") concerning public health emergencies] has been issued with respect to such countermeasure.

42 USC § 247d-6d (a) (1). That immunity "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered

9

countermeasure, including a causal relationship with the . . . dispensing, prescribing, administration, . . . or use of such countermeasure." Id. § 247d-6d (a) (2) (B). See *Arbor Mgmt. Svcs.,* 364 Ga. App. at 761-764 (1) (discussing PREP Act).[2]

"On March 17, 2020, the [HHS] Secretary issued a Declaration pursuant to the PREP Act to provide liability immunity for activities related to medical countermeasures against COVID-19." (Citation and punctuation omitted.) *Hendrix v. Arbor Terrace at Cascade*, No. 1:20-CV-2326-MHC, 2020 U.S. Dist. LEXIS 268293, at *7 (III) (A) (N.D. Ga. Nov. 23, 2020). See Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198 (Mar. 17, 2020) ("COVID-19 Declaration"). Pursuant to the HHS Secretary's COVID-19 Declaration, the term "covered countermeasure" includes any drug "used to treat, diagnose, cure, prevent, or mitigate COVID-19, . . . or any device used in the administration of any such product, and all components and constituent materials of any such product." 85 Fed. Reg. at 15202.

---

[2] "If immunity applies, the injured person or their survivors may seek compensation from . . . a regulatory program that provides reimbursement for some losses associated with the use of covered countermeasures. 42 USC § 247d-6e." *Lyons v. Cucumber Holdings*, 520 FSupp.3d 1277, 1282 (I) (B) (C.D. Cal. 2021).

As previously noted, Turner's amended complaint alleges that the Hospital clinical staff failed to administer the Heparin infusion after his surgery. In denying the Hospital's motion to dismiss, the trial court assumed that Heparin was a "covered countermeasure" under the PREP Act but concluded that immunity did not apply because Turner's alleged losses did not result from the "administration" or "use" of a covered countermeasure.

The trial court committed no error. Although not yet addressed by Georgia appellate courts, several federal courts have held that the PREP Act does not apply to preempt claims that are based on the non-use or failure to administer a covered countermeasure. See, e.g., *Hampton v. California*, 83 F4th 754, 763 (III) (B) (2) (9th Cir. 2023) ("[T]he PREP Act provides immunity only from claims that relate to the administration to or the use by an individual of a covered countermeasure — not such a measure's *non*-administration or *non*-use.") (citation and punctuation omitted; emphasis in original).[3] I find these federal cases persuasive and likewise conclude that

---

[3] See also *Hudak v. Elmcroft of Sagamore Hills*, 58 F4th 845, 856 (III) (B) (1) (6th Cir. 2023) ("[A]n allegation that [the defendant] *failed* to use a COVID-19 countermeasure (facemasks) or to administer another (an infection protocol) differs in kind from an allegation that [the defendant's] *administration* or [the decedent's] *use* of those countermeasures caused [the decedent's] death.") (emphasis in original); *Manyweather v. Woodlawn Manor*, 40 F4th 237, 245-246 (II) (A) (3) (b) (5th Cir. 2022)

the PREP Act does not provide immunity in cases such as the present one, where the allegation is that the defendant failed to administer or use a covered countermeasure.[4]

For these reasons, the trial court committed no error in determining that based on the allegations of Turner's amended complaint and the accompanying expert affidavits, the Hospital was not immune from liability under the GCPBSA or the

---

(distinguishing between the PREP Act's provisions addressing "the administration to or the use by an individual of a covered countermeasure" and the plaintiffs' claims, which asserted that the defendant nursing home's "*failure* to administer or use those countermeasures caused their mother's death") (emphasis in original); *Walker v. Arbor Mgmt. Svcs.*, No. 1:22-CV-2457-SCJ, 2022 U.S. Dist. LEXIS 238957, at *13 (III) (A) (N.D. Ga. Nov. 17, 2022) (the plaintiff's allegations "that Defendants *failed to administer* Covid-19 countermeasures" were not covered by the PREP Act) (emphasis in original); *Hendrix*, 2020 U.S. Dist. LEXIS 268293, at *11 (III) (C) ("the failure to take adequate countermeasures to prevent the spread of COVID-19 within a facility" is not covered by the PREP Act). See generally *Mackey v. Tower Hill Rehabilitation*, 569 FSupp.3d 740, 746 (I) (A) (N.D. Ill. 2021) (compiling cases holding that "the PREP Act does not address state law claims based on the failure to deploy countermeasures").

[4] In an amendment to its COVID-19 Declaration, the HHS Secretary specified that the failure to administer a covered countermeasure can fall within the PREP Act in the circumstance where: "(1) there are limited covered countermeasures; and (2) there was a failure to administer a covered countermeasure to one individual because it was administered to another individual." *Lyons*, 520 FSupp.3d at 1285 (III) (B) (2). See Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79190, 79197 (Dec. 9, 2020). However, that circumstance is inapplicable in this case and need not be addressed.

PREP Act. Consequently, unlike the majority, I would affirm the trial court's order denying the Hospital's motion to dismiss and therefore respectfully dissent.